UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-CR-20255-DIMITROULEAS/HUNT

UNITED STATES OF AMERICA,

vs.

PATRICK BOYD and
CHARLES BOYD,

           **Defendants**.
_____/

### GOVERNMENT'S MOTION FOR ORDER FINDING DEFENDANTS WAIVED PRIVILEGE AND FOR A BRIEF CONTINUANCE

The government respectfully moves the Court for an order (i) finding that Defendants have waived their and Safe Chain's attorney-client privilege regarding the purchase, sale, and distribution of HIV medication[1] and (ii) continuing the trial date by 30 days to permit the government to investigate and rebut Defendants' advice-of-counsel defense.

The government files this motion because, in communications with the government over the course of the last week, Defendants have taken inconsistent positions on whether they are

---

[1] The waiver should include the full scope of the conduct charged in the Indictment during the alleged conspiracy period, including the following subject matters: Safe Chain's acquisition, purchase, and any discussions regarding the potential or actual purchase, sale, and distribution of prescription branded HIV drugs from any distributor; T3s/pedigrees; FDA laws and regulations regarding the wholesale distribution of prescription drugs, including but not limited to any Drug Notification reporting requirements (FDA Form 3911s); State, including California, laws and regulations regarding the wholesale distribution of prescription drugs; Safe Chain's relationship with Adam Brosius and Worldwide Pharmasales; Adam Brosius's July 2020 federal indictment; pharmacies or individuals who obtained medication purchased from Safe Chain; complaints or concerns relating to branded HIV medication; and any other conduct that in any way relates to the allegations of the above-referenced Indictment. It should apply to communications with and materials prepared by or on behalf of the attorneys or law firms that worked with Safe Chain between April 1, 2020, and August 31, 2021, as well as internal Safe Chain communications regarding any advice provided.

claiming privilege over legal advice provided to Safe Chain during the course of the conspiracy alleged in the Indictment. Despite knowingly authorizing the release of 850,000 pages of potentially privileged materials to the prosecution team, many of which contain attorney-client privileged communications, Defendants insist that they have not waived and do not waive privilege. Defendants have had this material since February but it was not until the Court correctly understood their intention to backdoor an advice of counsel defense by asserting "good faith" based on their consultation with counsel that they authorized the filter team to release the privileged materials to the prosecution team, less than a month before trial. The defendants have now squarely put attorney advice at issue in this case by releasing the documents.

This week, Defendants also authorized the government to issue trial subpoenas to and seek interviews of the attorneys who provided legal advice, but as Defendants well knew, those same attorneys cannot meet with the government or provide additional information absent a clear waiver of privilege. An initial review of the released privileged documents demonstrates why the government must subpoena and interview the involved attorneys. As just one of several examples, the government has already reviewed an email from Defendant Charles Boyd to counsel seeking legal approval to buy and sell drugs from one of the black-market suppliers. The email to counsel conveniently omits a material fact: That compliance had already by that point confirmed that same supplier's T3 to be falsified, as he well knew. This is just one example of the many documents relating to attorneys that require the government to subpoena, interview attorneys and potentially receive other documents for context and call the attorneys at trial to address the defense. The Court should therefore issue a written order finding that Defendants' recent "non-assertions" (*i.e.*, selective waiver) over thousands of pages of privileged documents amount to a waiver of the attorney-client privilege. Further, at this time, the government cannot effectively investigate the

2

advice-of-counsel defense that Defendants are preparing to present at trial. The late-breaking release of this voluminous attorney-client material to the prosecution team and the government's current inability to move forward with key interviews of attorneys who very likely have evidence that rebuts the advice-of-counsel defense warrants a short continuance of the trial date.

## **INTRODUCTION**

Defendants appear to be setting the stage to assert a defense that provides them with all the benefits of an advice-of-counsel defense, without permitting the government or the jury to know what information was provided – and not provided – to the attorneys before they rendered that legal advice. During the conspiracy period, Defendants received advice from attorneys at the Frier Levitt law firm (the "Frier Levitt Attorneys") regarding the same subject matter alleged in the Indictment. Defendants have consistently declined to take a position on the advice-of-counsel defense, but purport to "reserve the right" to assert an advice-of-counsel defense, and to rely on a plain "good faith" defense based on the simple fact that they consulted attorneys. Defendants recently elected not to assert privilege over 850,000 pages of potentially and actually privileged communications with their attorneys and authorized the release of these materials to the prosecution team. But when asked whether they are waiving privilege over this legal advice, Defendants stated that they are not waiving privilege. Defendants cannot have it both ways, and they cannot use attorneys as both a sword and a shield.

At this late stage, just over two weeks before trial, after effectively waiving privilege over thousands of pages of privileged communications, the Court should reject the Defendants' gamesmanship and find that they have waived attorney-client privilege over the subject matter covered in the Indictment. Defendants' claim that they have not waived privilege has tied the government's hands, requiring it to tiptoe around any potential privilege landmines. The time to

3

prepare for trial is rapidly dwindling. Absent a Court order finding that the Defendants have waived privilege, the government cannot interview witnesses about the facts disclosed to them, the basis for their legal advice, subpoena additional documents, or call them to testify. In fact, counsel for Frier Levitt[2] has told the government that he cannot advise his clients to meet with the government or produce any documents given defense counsel's present statement that their clients have not waived privilege

## FACTUAL AND PROCEDURAL BACKGROUND

I. **The Indictment and the government's early attempts to determine if Defendants intend to assert a defense involving attorneys.**

On June 18, 2024, the Grand Jury returned the Indictment alleging that, between April 2020 and August 2021, Defendants conspired to introduce misbranded and adulterated drugs into interstate commerce and to defraud the United States (Count 1); introduced misbranded drugs into interstate commerce (Counts 2-3); conspired to traffic in pre-retail medical products with false documentation – the falsified T3s/pedigrees concealing the drugs' illicit origin (Count 4); conspired to commit wire fraud (Count 5); and committed wire fraud (Counts 6-8). The Grand Jury also found probable cause to believe that Defendants accomplished their crimes, in part, by distributing diverted prescription drugs that were accompanied by T3s/pedigrees they knew contained falsified information designed to conceal the illicit origin of the drugs. It further found that Defendants were made aware in August 2020 of instances in which the bottles they sold as HIV medication contained different drugs entirely; despite all this, the Defendants continued buying and selling HIV drugs

---

[2] Counsel currently represents the Frier Levitt firm and one of the lawyers who provided legal advice to the Defendants. He has not yet been retained by one of the other senior attorneys who provided legal advice to the Defendants.

4

from the same suppliers who sold them these diverted, misbranded, and adulterated drugs at steeply discounted prices.

Since at least January 8, 2025, the government has repeatedly and consistently requested that Defendants share whether or not they intend to assert an advice-of-counsel defense. The purpose of these requests was to avoid any potential delay of trial and to permit the government to investigate any such claims. In those six months, the Defendants suggested such a defense was unlikely and did not assert such a defense, maintaining privilege over their attorney-client communications.

### II. The Court's inquiry about Defendants' intent to raise defenses that involve the advice of attorneys at trial.

On July 7, 2025, the Court heard argument on the government's Motion for Authorization to Release Material Subject to the Crime-Fraud Exception (the "Crime Fraud Motion"), in which the government sought the release to the prosecution team of a subset of privileged documents among the 850,000 pages of potentially privileged materials. During this hearing, just shy of one month before trial, the Court inquired about the Defendants' intention to assert a defense that involves the advice of attorneys:

> if you are going to use good faith and you are going to use advice of counsel, isn't it only fair that the government should be able to rebut that? I mean, your client gets on the stand and says the lawyer told me to do this, and there is evidence maybe that contradicts that, why shouldn't the jury be able to hear the evidence that contradicts that?

July 7, 2025 Hearing Transcript at 18: 16-22.

In response, Defendants claimed that it would be appropriate for them to assert a defense that they engaged attorneys for advice relating to the charged conduct, but not permit the jury to hear what that advice was, or what information Defendants shared with the attorneys:

> I think if the client gets on the stand and says, "I consulted with an attorney," not what the attorney advised him, that's part of the good faith defense that going to an

5

> attorney every time there is an issue, trying to speak with them, get information from them, and then make a determination.
>
> The good faith of reliance on counsel is when the information provided to the -- excuse me -- to the witness or defendant, when that is sought to be introduced. And that's a separation, we believe, between the good faith defense and good faith reliance on counsel. When you hire -- when you have a business and you have a regulatory -- that's regulated, and you have attorneys that you consult with regularly to make sure -- to want to do things the right way, that's part of the good faith defense. What they told you, what they provided you, that's good faith reliance on counsel.

*Id*. at 18:23-20:1.

The Court highlighted the inherent problems with that position, asking as follows:

> But what if what [the attorneys] told them was contrary to what they did, and the good faith defense was that they went to the lawyer to get advice, but the lawyer told them stuff that made what they did a fraud? It just seems to me that they overlap.

*Id*. at 19:15-19.

At the hearing, Defendants confirmed that they were not yet prepared to waive any defenses at that point. *Id*. at 19:20-25.

The Court concluded the hearing and set a follow-up hearing on July 16th, and noted that "if I haven't [ruled], then at that point we will have a hearing set and I can hear from the defense as to their position on waiving defenses." *Id*. at 31:8-11.

On July 13, 2025, the Court issued an order denying, without prejudice, the government's Crime Fraud Motion, but noting that:

> If Defendants decide to raise either of these defenses, it is possible the Court will release materials at issue to the Prosecution Team regardless of this Court's determination as to the crime-fraud exception. *See, e.g.*, *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc*., 136 F.3d 695, 704 (10th Cir. 1998)) ("a litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."). While the advice-of-counsel defense is not one of the defenses that must be raised before trial under rule 12(b)(3) of the Federal Rules of Criminal Procedure, raising these defenses sooner rather than later mitigates the possibility that the Court will need to consider postponing the trial or

taking a recess during the trial to allow the Prosecution Team to review the documents at issue.

ECF No. 86.

The Court further ordered that "[u]nless and until defense counsel notifies the Court of its intent to raise the good faith or advice of counsel defense, the hearing set for July 16, 2025, at 1:15 PM is **CANCELLED**." *Id*.

### III. Less than one month before trial, Defendants authorized the release of over 850,000 pages of documents and declared an intent to assert a defense that relates to their consultation with attorneys.[3]

On July 15, 2025, Defendants filed a joint Notice, ECF No. 89 (the "Notice"). In the Notice, the Defendants stated that:

    1. The Boyds will not be providing any additional privilege logs, or claiming privileges for any of the approximately 850,000 pages of documents produced by the government Filter Team on or about February 28, 2025;

    2. The Boyds withdraw the previously provided 2018 and 2019 prior privilege log that the government Filter Team claimed was unsatisfactory, and;

    3. As of this date, the Boyds intend to utilize the good faith defense at trial, and reserve the right to use the good faith reliance on counsel defense at trial.

ECF No. 89.

Simultaneously, the Defendants took the position that they are somehow *not waiving* privilege, despite acknowledging that they may rely on a defense that directly involves attorney advice, and that instead, they are simply not asserting privilege over the 850,000 pages of documents, which include many privileged communications.

On July 21, 2025, undersigned counsel conferred with counsel for Defendants to sort out Defendants' inconsistent positions and reasonably investigate the defenses raised. The government

---

[3] Defendants maintain that they did not "waive" privilege over these documents, but that they merely did not assert privilege over them. As discussed in greater detail below, the Court should find that this constitutes a waiver.

7

shared its intent to issue a trial subpoena to the Frier Levitt Attorneys seeking (1) other documents relating to the advice provided, and (2) testimony at trial. Counsel for the Defendants made several representations, including:

1. That the Defendants have not waived attorney client privilege, they just haven't asserted privilege over clearly privileged documents produced, and

2. That the Defendants would not object to the government serving a trial subpoena on Frier Levitt, but may move to quash depending on the scope.

That same day, counsel for Defendants introduced via email undersigned counsel with a point of contact at Frier Levitt and reiterated the position that Defendants "have not waived any privileges, but recognize that by not asserting privileges as to the 850,000 pages of documents, the Boyds can not now claim privileges as to those documents. The Boyds also recognize that they have no basis to object to government issuing trial subpoena, but will have the opportunity to object to the scope of any subpoena, if appropriate." *See* Exhibit A.

Recognizing that a law firm would not agree to produce documents or testimony relating to their representation of clients who maintain that they do not waive privilege, on July 22, 2025, undersigned counsel asked counsel for the Defendants if they intended to sign any kind of written waiver that would enable the Frier Levitt Attorneys to respond to a subpoena and meet with the government.

On July 23, 2025, counsel for the Defendant Charles Boyd responded with additional statements about his client's waiver of attorney-client privilege, including internally inconsistent and unworkable positions:

1. Charles Boyd does not accept the government's request that he execute a written waiver of attorney-client privilege and "work-product doctrine" related to the subject matter of the documents covered by our Notice filed last week;

2. Charles Boyd has no standing to object to the issuance of a trial subpoena to Frier – Levitt for documents. However, Charles Boyd request that any such subpoena be

8

      provided to Charles Boyd who reserves his right to file a motion to quash said subpoena in whole or in part;

3. Charles Boyd has no standing to object to the issuance of a trial subpoena to any Frier Levitt attorney, but reserves the right to file applications to the Court concerning the scope of any trial testimony.

4. Charles Boyd has no objection to the government filing a pretrial motion in limine that identifies the trial testimony the government will be seeking to introduce at trial from the Frier-Levitt attorneys. Should Charles Boyd have any objection to any of the identified trial testimony in that motion, Charles Boyd will seek appropriate relief from the Court.

5. Charles Boyd has no objection to the government seeking to interview Frier-Levitt attorneys prior to trial. It is my understanding that those attorneys will have legal representation and will make independent determinations concerning agreeing to interview and their ethical obligations.

6. The Frier-Levitt law firm has been advised that Charles Boyd has not asserted privileges concerning the 850,000 pages of documents produced by the government.

7. The Frier Levitt law firm has also been advised that Charles Boyd has not waived his attorney client privilege with the law firm.

Exhibit B.

      As expected, because Defendants claim to have not waived privilege and assert that they maintain a privilege, the government cannot speak to or receive any documents from the Frier Levitt Attorneys whatsoever, or call them to testify at trial. On July 23, 2025, counsel for the Frier Levitt Attorneys confirmed that he could not advise his clients to meet with the government or produce any documents given defense counsel's present statement that their clients have not waived privilege. Therefore, how—and when—these issues are determined may have a profound impact on how the case proceeds, starting with the government's ability to timely subpoena and interview attorneys who provided the relevant advice. Further, on July 24, 2025, counsel for the Frier Levitt Attorneys confirmed that, given he and his clients do not know whether defendants have waived, or the scope of that waiver, they do not know the volume of documents that might exist within Frier Levitt that could be responsive to a future subpoena. And as a result, he and his clients do not know how long it might take to review and produce those documents.

## **LEGAL STANDARD**

Where a party selectively and intentionally introduces information and testimony into litigation regarding their reliance on counsel, "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *See* Fed. R. Evid. 502(a); Fed. R. Evid. 502(a) Advisory Committee Notes; *United States v. Nobles*, 422 U.S. 225, 239-240 (1975); *see also Chao v. Tyson Foods, Inc.*, 568 F.Supp.2d 1300, 1327–28 (N.D.Ala.2008) (quoting *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir.1998)) ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.").

"Courts have found waiver by implication . . . when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1418 (11th Cir. 1994). Once a party waives attorney-client privilege as to some advice, all advice and communications on that subject matter are also waived. A "Defendant may not disclose portions of otherwise protected communications between [him] and [his] attorney for the benefit of a defensive argument while simultaneously invoking the attorney-client privilege with respect to other attorney-client communications on the same subject matter." *United States v. Charlemagne*, No. 8:15-cr-462, 2016 WL 11678620, at *2 (M.D. Fla. Sept. 2, 2016); *see also id*. at *2 ("The attorney client privilege cannot be used as both a shield and a sword, and [the defendant] cannot claim in his defense that he relied on [his attorney]'s advice without permitting the prosecution to explore the substance of that advice.") (quoting *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998)).

# ARGUMENT

**I.     The Court should rule that Defendants have waived attorney-client privilege and continue the trial by 30 days.**

Defendants have authorized the release of over 850,000 pages to the prosecution team, many of which contain communications with attorneys that they previously asserted privilege over. The government's initial review of the privileged documents received makes clear that the attorney communications require additional information, interviews, and testimony from the attorneys to rebut the Defendants' defense that they acted in good faith by consulting counsel. At the Court's request, the government is prepared to show representative privileged documents that demonstrate why the documents, without additional information and testimony from the attorneys or other documents the attorneys have, are insufficient to understand what information the Defendants provided the attorneys, what legal advice the attorneys provided the Defendants, and the basis for that advice.

Defendants have stated that they no longer assert privilege over any of these communications. In the same breath, Defendants state that they are not waiving privilege over any legal advice received. *See* Exhibit B. Both of those things cannot be true. Defendants' decision to authorize the release of attorney-client communications to the prosecution team is a knowing waiver of privilege as to the subject matter of this advice. "Courts have found waiver by implication . . . when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Cox*, 17 F.3d at 1418. Indeed, Defendants recognized as much when they stated over email that any objections to the governments' attempts to subpoena the attorneys who advised them would likely be overruled.

Defendants appear to be setting up an advice-of-counsel defense by selectively releasing privileged communications to the prosecution team. While Defendants have in effect waived

11

privilege by doing so, they maintain they have not and refuse to provide a written waiver covering the subject matter contained in the released privileged documents and the advice rendered related to the conduct alleged in the indictment. The Defendants' attempt to selectively waive privilege severely undermines the government's ability to investigate and rebut the Defendants' supposed "good faith" defense, which the Court correctly recognized amounted to an advice-of-counsel defense. Counsel for the attorneys who provided the advice has made clear that they will not agree to provide any documents or speak with the government at all without a written waiver or court order. The government also cannot properly meet with other witnesses who may have been privy to this advice in the absence of a waiver that defines the scope of the subject matter of the legal advice at issue. If the government inadvertently intrudes on any supposedly remaining privilege, the government risks accusations that it overstepped. The defense has intentionally and strategically hamstrung the government's ability to prepare for trial and try this case efficiently. These tactics also conceal critical evidence from the jury and impede the truth-seeking function of a trial.

      Under the current posture, the government is unable to prepare for trial as currently scheduled. Even if Defendants issued a forthwith waiver, reviewing 850,000 pages of documents, preparing for and conducting attorney interviews, and meeting with other witnesses about the nature of the legal advice would be an impossible endeavor. Counsel for Frier Levitt has stated that, without knowing whether the Defendants have waived privilege, or the scope of the waiver, he and his clients do not know the volume of documents that might exist within Frier Levitt that could be responsive to a future subpoena, and do not know how long it might take to review and produce those documents. The Court should find that the Defendants' selective release of

12

voluminous privilege materials constitutes a waiver and continue the trial by 30 days to ensure a fair trial that allows the jury to hear all relevant evidence.

The law is clear that, once a party waives attorney-client privilege as to some advice—as Defendants have done by expressly authorizing the release of attorney-client communications to the prosecution team—all advice and communications on that subject matter are also waived. *See Charlemagne*, 2016 WL 11678620, at *2 ("The attorney client privilege cannot be used as both a shield and a sword and [the defendant] cannot claim in his defense that he relied on [his attorney]'s advice without permitting the prosecution to explore the substance of that advice.") (citation omitted); *see also Cox*, 17 F.3d 1386, 1417 (11th Cir. 1994) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.") (internal quotation marks omitted) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).[4] Because the Defendants intend to use these defenses at trial and because the Defendants released privileged documents relating to the same subject matter, Defendants have waived privilege and the Court should find that the attorney-client privilege relating to the subject matters at issue in the Indictment has been waived, so that the government may subpoena records and speak to witnesses about this advice.

---

[4] For similar reasons, when defendants assert advice-of-counsel defenses, courts in this district have ruled that defendants cannot selectively waive privilege and instead must waive over the subject matter of the advice. *See, e.g.*, *United States v. Caskey*, 24-cr-20155-RAR, D.E. 278 ("[W]hen a defendant asserts an advice-of-counsel defense, 'the party waives the attorney-client privilege as to the subject matter of that advice.' *United States v. Bachynsky*, No. 04-CR-20250, 2007 WL 1521499, at *2 (S.D. Fla. May 22, 2007) (citing *Cox v. Adm'r United States Steel*, 17 F.3d 1386, 1417-21 (11th Cir. 1994)). This waiver applies 'to the *subject matter* of the advice relied upon and not merely to the *specific attorney* relied upon.' *United States v. Dougherty,* No. 22-CR-80022, 2023 WL 5620715, at *1 (S.D. Fla. Aug. 31, 2023) (emphasis in original).").

## **CONCLUSION**

The government respectfully requests that the Court issue an order (i) finding that Defendants have waived their and Safe Chain's privilege regarding their purchase, sale, and distribution of prescription branded medication during the conspiracy period, and (ii) continue the trial by 30 days.

July 25, 2025

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

LORINDA LARYEA, ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

By: */s/ Alexander Thor Pogozelski*
Alexander Thor Pogozelski
Assistant United States Attorney
Florida Special Bar No. A5502549
99 Northeast 4th Street
Miami, Florida 33132
Tel: (786) 649-5251
Email: Alexander.Pogozelski@usdoj.gov

*/s/ Jacqueline Zee DerOvanesian*
Jacqueline Zee DerOvanesian
Trial Attorney
Florida Bar No. 125662
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue NW
Washington, D.C. 20005
Tel: (202) 285-9285
Email: Jacqueline.DerOvanesian@usdoj.gov

## **LOCAL RULE 88.9(a) CERTIFICATION**

On July 23, 2025 and July 24, 2025, undersigned counsel conferred by email with counsel for the Defendants in a good faith effort to resolve the issues raised in the Motion. Counsel for the Defendants represented that they oppose the Motion in its entirety.

*/s/ Jacqueline Z. DerOvanesian*
Jacqueline Z. DerOvanesian

## CERTIFICATE OF SERVICE

I, Jacqueline DerOvanesian, hereby certify that on July 25, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Jacqueline Z. DerOvanesian*
Jacqueline Z. DerOvanesian
