UNITED STATES DISTRICT COURT
Southern District of Florida
299 East Broward Boulevard
Fort Lauderdale, FL 33301

CASE NO: 24 CR 20255 WPD

STYLE: USA v Patrick Boyd, Charles Boyd

DATE: 10/29/2025

## Notice of Filing

➢ Copy of Indictment that went to the jury for deliberations.

Signed: _____

Name: Crystal Barnes-Butler

Title: Courtroom Deputy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **24-20255-CR-DIMITROULEAS/HUNT**

18 U.S.C. § 371
21 U.S.C. § 331(a)
21 U.S.C. § 333(a)(2)
18 U.S.C. § 670
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 982(a)(7)
18 U.S.C. § 981(a)(1)(C)

FILED BY ___MP___ D.C.

Jun 18, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES OF AMERICA

vs.

ADAM BROSIUS,
PATRICK BOYD and
CHARLES BOYD,

Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

1.  The U.S. Food and Drug Administration (FDA) was the federal agency responsible for protecting the health and safety of the American public by, among other things, regulating the distribution and sale of prescription drugs and enforcing the Federal Food, Drug, and Cosmetic Act (FDCA), Title 21, United States Code, Sections 301, *et seq.* One of the purposes of the FDCA was to ensure that drugs sold for use by humans were safe, effective, and bore labeling containing only true and accurate information.

2. Federal law, including Title 21, United States Code, Section 360eee-1, generally required that prescription drugs sold in the United States by or to wholesale distributors be accompanied by product tracing information, which consisted of transaction information, transaction history, and a transaction statement. The product tracing information identified, among other things, the product, the quantity, the lot number, strength and dosage, the date of each sale, and the parties to each transaction. Such product tracing information was commonly referred to in the industry as "T3s" or "pedigrees."

3. Under the FDCA, "drugs" were defined as, among other things, articles intended for use in the cure, mitigation, treatment, or prevention of disease, pursuant to Title 21, United States Code, Section 321(g)(1)(B). A "prescription drug" was any drug intended for use in humans that, because of its toxicity or potential for harmful effect, the method of its use, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug, or was limited by an approved application under Title 21, United States Code, Section 355 to use under the professional supervision of a practitioner licensed by law to administer such drug, pursuant to Title 21, United States Code, Section 353(b)(1).

4. The introduction or delivery for introduction, or the causing thereof, into interstate commerce of any drug that was adulterated or misbranded was a violation of federal law, pursuant to Title 21, United States Code, Section 331(a).

5. A drug was adulterated if, among other things, any substance had been substituted in whole or in part for the drug, pursuant to Title 21, United States Code, Section 351(d).

6. A drug was misbranded if, among other things, its labeling was false or misleading in any particular, pursuant to Title 21, United States Code, Section 352(a)(1). A "label" was written, printed, or graphic matter upon the immediate container of the drug, while "labeling" was

a broader term that included all labels and other written, printed, or graphic matter upon the drug or any of its containers or wrappers, or that accompanied the drug, pursuant to Title 21, United States Code, Section 321(k) and (m).

### Prescription Drug Diversion

7. The term "prescription drug diversion" referred to the various ways in which prescription drugs were removed from regulated distribution channels and subsequently reintroduced into the wholesale marketplace. Common methods of prescription drug diversion included, but were not limited to, acquiring the drugs illegally through fraud or from individual patients for whom the prescription drugs had been prescribed and dispensed but intentionally not consumed. These diverted drugs were then reintroduced into the marketplace with false documentation concealing their true source and eventually resold to individual consumers by pharmacies, which also typically billed the drugs to "health care benefit programs," as defined by Title 18, United States Code, Section 24(b). Once diverted from the regulated distribution channel, it became difficult for regulators and consumers to know whether a prescription drug was altered, stored in improper conditions, had its potency adversely affected, or was otherwise harmful.

### The Defendants and Related Entities

8. Safe Chain Solutions LLC ("Safe Chain") was a limited liability company organized under the laws of the State of Delaware with offices in Cambridge, Maryland, and Miami, Florida. Safe Chain was a wholesale distributor that purported to sell legitimate prescription drugs, including expensive human immunodeficiency virus ("HIV") drugs, to pharmacies located throughout the United States.

9. Worldwide Pharma Sales Group, Inc. ("Worldwide Pharma Sales"), also known as WW Pharma Sales, was a corporation organized under the laws of the State of Delaware with a

business address of 455 NE 5th Ave., Suite D434, Delray Beach, Florida. Worldwide Pharma Sales helped Safe Chain locate both suppliers of HIV drugs and pharmacy customers to purchase HIV drugs.

10. Boulevard 9229, LLC ("Boulevard") was a limited liability company organized under the laws of the State of New York with a business address of 9229 Queens Boulevard, Suite 11, Rego Park, New York.

11. Gentek LLC ("Gentek") was a limited liability company organized under the laws of the State of Connecticut with a business address of 45 Cedar Street, Unit 3, Stamford, Connecticut.

12. Synergy Group Wholesalers, LLC ("Synergy") was a limited liability company organized under the laws of the State of New Jersey with a business address of 491 Amwell Road, Suite 103, Hillsborough, New Jersey.

13. Rapid's Tex Whole Sales Corp. ("Rapid's Tex") was a corporation organized under the laws of the State of Texas with a business address of 10333 Harwin Drive, Suite 263, Houston, Texas.

14. Omom Pharmaceuticals, Inc. ("Omom Pharmaceuticals") was a corporation organized under the laws of the State of California with a business address of 9265 Archibald Avenue, Rancho Cucamonga, California.

15. Pharmacy 1 was a pharmacy located in Miami Beach, Florida.

16. Pharmacy 2 was a pharmacy located in Miami Beach, Florida.

17. Defendant **ADAM BROSIUS**, a resident of Palm Beach County, Florida, was the owner of Worldwide Pharma Sales and an owner of Safe Chain.

18. Defendant **PATRICK BOYD**, a resident of the State of Maryland, was an owner and Managing Partner of Safe Chain.

19. Defendant **CHARLES BOYD**, a resident of the State of Maryland, was an owner and the CEO of Safe Chain.

## COUNT 1
### Conspiracy to Introduce Adulterated and Misbranded Drugs and to Defraud the United States
### (18 U.S.C. § 371)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around at least as early as April 2020, and continuing through in or around August 2021, in Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ADAM BROSIUS,
PATRICK BOYD and
CHARLES BOYD,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury:

(a) to commit an offense against the United States, that is, with the intent to defraud and mislead, to introduce and deliver for introduction into interstate commerce, and cause to be introduced and delivered for introduction into interstate commerce, adulterated and misbranded drugs, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2); and

(b) to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means the lawful government functions of the FDA in its oversight and regulation of the interstate sale and distribution of drugs in the United States and its efforts to

5

safeguard the health and safety of consumers who purchase drugs in the United States, in violation of Title 18, United States Code, Section 371.

### Purpose of the Conspiracy

3.  It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by obtaining, selling, and distributing adulterated, misbranded, and diverted prescription drugs as if they had been acquired through the legitimate channels of distribution in the pharmaceutical market.

### Manner and Means of the Conspiracy

The manner and means by which defendants, **ADAM BROSIUS, PATRICK BOYD, CHARLES BOYD**, and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.  **PATRICK BOYD, CHARLES BOYD**, and others obtained wholesale drug distributor licenses for Safe Chain in numerous states, including in Florida.

5.  **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** purchased, through Safe Chain, large quantities of diverted prescription drugs, including HIV drugs, from Boulevard, Gentek, Synergy, Rapid's Tex, and Omom Pharmaceuticals (the "HIV Drug Suppliers").

6.  The diverted prescription drugs that **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** purchased from the HIV Drug Suppliers were obtained by the HIV Drug Suppliers primarily through unlawful diversion "buyback" schemes, in which previously dispensed bottles of prescription drugs were purchased in cash from patients, many of whom were HIV patients.

7. **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** purchased these diverted prescription drugs from the HIV Drug Suppliers at steeply discounted prices, which they were aware was far below the pricing available for such drugs had they been acquired through legitimate and regulated channels of distribution and from distributors authorized by the drugs' manufacturers to distribute such drugs.

8. **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** purchased diverted prescription drugs that were not accompanied by T3s/pedigrees, as required by law, and resold these diverted prescription drugs to pharmacy customers without the required T3s/pedigrees.

9. **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** also purchased diverted prescription drugs that were accompanied by falsified information in the T3s/pedigrees. The defendants and others created T3s/pedigrees containing this falsified information and resold these diverted prescription drugs to pharmacy customers along with the falsified T3s/pedigrees. The falsified information in the T3s/pedigrees concealed the true origin of the diverted prescription drugs from Safe Chain's customers and made it appear as though these drugs had been acquired legitimately through the regulated supply chain.

10. In some instances, **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** purchased and subsequently redistributed bottles obtained from the HIV Drug Suppliers that were falsely labeled as containing a specific HIV drug but which did not contain the drug on the label or labeling and instead contained a different drug. The defendants were made aware of such incidents involving the HIV drugs they sold to customers but nevertheless continued buying and selling HIV drugs obtained from the HIV Drug Suppliers.

11. **ADAM BROSIUS, PATRICK BOYD, CHARLES BOYD,** and others disregarded concerns raised by Safe Chain employees regarding the company's business practices, including concerns regarding the diverted prescription drugs that Safe Chain purchased from the HIV Drug Suppliers and the falsified T3s/pedigrees accompanying those diverted prescription drugs.

12. From in or around May 2020 through in or around July 2021, **ADAM BROSIUS, PATRICK BOYD,** and **CHARLES BOYD** sent, through Safe Chain and via interstate wire transmissions, more than $90 million in payments to the HIV Drug Suppliers for the adulterated, misbranded, and diverted prescription drugs.

13. **ADAM BROSIUS, PATRICK BOYD, CHARLES BOYD,** and others introduced these adulterated, misbranded, and diverted prescription drugs into interstate commerce by selling and distributing them for profit to pharmacies, including in the Southern District of Florida, while knowing that the T3s/pedigrees accompanying the drugs falsely represented that the drugs had been acquired and distributed in compliance with federal law.

14. **ADAM BROSIUS, PATRICK BOYD, CHARLES BOYD,** and others sold these adulterated, misbranded, and diverted prescription drugs, along with the false and fraudulent T3s/pedigrees accompanying the drugs, to deceive pharmacies, patients, and health care benefit programs into believing that their supply of prescription drugs was obtained through the legitimate supply chain.

15. Safe Chain's pharmacy customers dispensed these adulterated, misbranded, and diverted prescription drugs to unsuspecting customers and generally sought and received payment from health care benefit programs for the diverted prescription drugs.

16. **ADAM BROSIUS, PATRICK BOYD, CHARLES BOYD,** and their co-conspirators used the proceeds of the conspiracy for their own use and benefit, the use and benefit of others, and to further the fraud.

## Overt Acts

In furtherance of the conspiracy, and to achieve its objects, at least one member of the conspiracy committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts:

1. On or about May 22, 2020, **ADAM BROSIUS** sent **CHARLES BOYD** an electronic message stating, "our numbers are gonna be 1 mil+ this month on hiv."

2. On or about July 8, 2020, **PATRICK BOYD** sent **ADAM BROSIUS** an electronic message stating, "Spent two hours counting hiv woth (sic) the crew. That shits a mess."

3. On or about July 24, 2020, **ADAM BROSIUS, PATRICK BOYD,** and **CHARLES BOYD** caused Safe Chain to make a payment of approximately $312,300 to Boulevard for misbranded and diverted prescription drugs.

4. On or about August 14, 2020, **CHARLES BOYD** sent **PATRICK BOYD** a text message stating, "We need to talk tomorrow about HIV."

5. On or about August 14, 2020, **CHARLES BOYD** sent **PATRICK BOYD** a text message stating, "Patient opened a bottle and it was different medication."

6. On or about August 14, 2020, **CHARLES BOYD** sent **PATRICK BOYD** a text message stating, "It was from Gentek and sealed."

7. On or about August 14, 2020, **CHARLES BOYD** sent **PATRICK BOYD** a text message stating, "It was replaced with bipolar med."

8. On or about August 18, 2020, **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** caused Safe Chain to make a payment of approximately $1.2 million to Gentek for adulterated, misbranded, and diverted prescription drugs.

9. On or about September 29, 2020, **PATRICK BOYD** forwarded **ADAM BROSIUS** an email from Safe Chain's Director of Compliance regarding her unsuccessful efforts to verify the information contained in Boulevard's T3s/pedigrees and wrote, "We've had two bad returns with opened bottles and broken pills last two days and the below sounds pretty bad."

10. On or about September 30, 2020, **PATRICK BOYD** and **CHARLES BOYD** received an email from Safe Chain's Director of Compliance confirming that the information contained in T3s/pedigrees for HIV drugs obtained from Boulevard was false.

11. On or about October 12, 2020, **PATRICK BOYD** and **CHARLES BOYD** received an email from Safe Chain's Director of Compliance confirming that the information contained in a T3/pedigree for HIV drugs obtained from Boulevard was false and stating that the manufacturer of the drug "believes this to be a counterfeit drug which we should report to the FDA."

12. On or about October 23, 2020, **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** caused Safe Chain to make a payment of approximately $200,000 to Boulevard for misbranded and diverted prescription drugs.

13. On or about January 21, 2021, **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** caused Safe Chain to send a shipment of misbranded and diverted HIV drugs obtained from Boulevard to Pharmacy 1.

14. On or about February 23, 2021, **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** caused Safe Chain to send a shipment of misbranded and diverted HIV drugs obtained from Boulevard to Pharmacy 2.

15. On or about March 26, 2021, **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** caused Safe Chain to make a payment of approximately $700,000 to Boulevard for misbranded and diverted prescription drugs.

16. On or about April 30, 2021, **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** caused Safe Chain to make a payment of approximately $1.1 million to Synergy for misbranded and diverted prescription drugs.

17. On or about July 7, 2021, **ADAM BROSIUS, PATRICK BOYD**, and **CHARLES BOYD** caused Safe Chain to make a payment of approximately $527,277 to Omom Pharmaceuticals for misbranded and diverted prescription drugs.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-3
### Introduction of a Misbranded Drug Into Interstate Commerce
### (21 U.S.C. § 331(a) and 333(a)(2))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ADAM BROSIUS,**
**PATRICK BOYD and**
**CHARLES BOYD,**

did, with the intent to defraud and mislead, introduce and deliver for introduction into interstate commerce, and cause to be introduced and delivered for introduction into interstate commerce, a

drug that was misbranded in that the labeling of the drug was false and misleading in any particular, including that the T3/pedigree accompanying the drug contained falsified information, as set forth below:

| Count | Approximate Date of Delivery | Description of Transaction |
|---|---|---|
| 2 | January 21, 2021 | Shipment of misbranded HIV drug Biktarvy from outside the State of Florida to Pharmacy 1, located in the Southern District of Florida. |
| 3 | February 23, 2021 | Shipment of misbranded HIV drug Biktarvy from outside the State of Florida to Pharmacy 2, located in the Southern District of Florida. |

In violation of Title 21, United States Code, Sections 331(a) and 333(a)(2), and Title 18, United States Code, Section 2.

## COUNT 4
### Conspiracy to Traffic in Medical Products with False Documentation
### (18 U.S.C. § 670)

1.  The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.  From in or around at least as early as September 2020, and continuing through in or around August 2021, in Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ADAM BROSIUS,**
**PATRICK BOYD and**
**CHARLES BOYD,**

owners and agents of an organization in the supply chain for pre-retail medical products, did knowingly and willfully combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to knowingly and falsely make, alter, forge, and counterfeit

12

the labeling and documentation of pre-retail medical products, and to knowingly possess, transport, and traffic in pre-retail medical products involving false, altered, forged, and counterfeited labeling and documentation, in and using a means and facility of interstate commerce, in violation of Title 18, United States Code, Sections 670(a)(2) and (3).

It is further alleged that the value of the medical products involved in the offense was $5,000 or greater.

All in violation of Title 18, United States Code, Section 670(a)(6), (b)(1), and (c)(2).

## COUNT 5
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around at least as early as April 2020, and continuing through in or around August 2021, in Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ADAM BROSIUS,
PATRICK BOYD and
CHARLES BOYD,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in

interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) obtaining diverted prescription drugs that were accompanied by false and fraudulent documentation concealing the drugs' true origin; (b) selling and distributing the diverted prescription drugs to pharmacies with that false and fraudulent documentation, who in turn resold the diverted prescription drugs to unsuspecting customers; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their own personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means of the Conspiracy

The allegations contained in the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 6-8
### Wire Fraud
### (18 U.S.C. § 1343)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around at least as early as April 2020, and continuing through in or around August 2021, in Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ADAM BROSIUS,
PATRICK BOYD and
CHARLES BOYD,**

14

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Scheme and Artifice

3. It was a purpose of the scheme and artifice to defraud for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) obtaining diverted prescription drugs that were accompanied by false and fraudulent documentation concealing the drugs' true origin; (b) selling and distributing the diverted prescription drugs to pharmacies with that false and fraudulent documentation, who in turn resold the diverted prescription drugs to unsuspecting customers; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their own personal use and benefit, the use and benefit of others, and to further the fraud.

### The Scheme and Artifice to Defraud

4. The allegations contained in the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as the description of the scheme and artifice.

### Use of the Wires

5. On or about the dates specified as to each count below, in Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ADAM BROSIUS,**
**PATRICK BOYD and**
**CHARLES BOYD,**

for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as described below:

| Count | Approximate Date | Description of Interstate Wire |
|---|---|---|
| 6 | August 6, 2020 | Wire transfer in the amount of $400,000 from the JPMorgan Chase account ending in 5196, belonging to Worldwide Pharma Sales, from inside the Southern District of Florida, to the Citizens Bank account ending in 4795, belonging to Gentek, outside the State of Florida—for the purchase of diverted and misbranded HIV drugs. |
| 7 | October 30, 2020 | Email transmission from **ADAM BROSIUS** to **PATRICK BOYD** and **CHARLES BOYD**, causing a wire transmission from inside the Southern District of Florida to outside the State of Florida, stating, in part, as follows: "great month between the 2 locations we sold about 12.5 million that is 150 million a year with blvd back in play hopefully we can continue the momentum." |
| 8 | April 13, 2021 | Email transmission from Safe Chain to its customer Pharmacy 1, causing a wire transmission from outside the State of Florida to inside the Southern District of Florida, attaching falsified T3s/pedigrees accompanying Safe Chain's sales of misbranded and diverted HIV drugs to Pharmacy 1. |

In violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL

FOR

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
ALEXANDER THOR POGOZELSKI
JACQUELINE ZEE DEROVANESIAN
TRIAL ATTORNEYS
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE