6/1/18   CB/PB

# SALES REPRESENTATION AGREEMENT

THIS SALES REPRESENTATION AGREEMENT (this "*Agreement*") is made effective as of [●] (the "*Effective Date*") by and between Safe Chain Solutions, LLC, a Delaware limited liability company with its principal office located at 822 Chesapeake Drive, Cambridge, MD 21613 ("*Company*"), and Worldwide Pharma Sales Group Inc., a Delaware Corporation with its principal office located at 233 Rock Road #237, Glen Rock, NJ 07452 ("*Contractor*"). Company and Contractor are sometimes referred to in this Agreement individually as a "*Party*" and collectively as the "*Parties*."

## RECITALS

WHEREAS, Company is engaged in the business of wholesale distribution of certain pharmaceutical products supplied to Company by pharmaceutical manufacturers and other suppliers ("*Manufacturers*") for sale or use by physicians, pharmacies, medical practice entities, and other health care professionals ("*Prospective Clients*");

WHEREAS, Contractor has the requisite knowledge, skill, and experience necessary to market and promote the Products (as defined in Section 1.1) to Prospective Clients on behalf of the Company;

WHEREAS, Contractor desires to contract with Company as a sales agent to market and promote the Products to Prospective Clients and Existing Clients (as defined in Section 1.1), subject to the terms and conditions hereinafter set forth; and

WHEREAS, Company desires to engage the services of Contractor subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement, and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

### Article 1 – Engagement, Association and Term

1.1.    Engagement.  Subject to the terms and conditions of this Agreement, Company hereby engages Contractor during the Term (as defined in Section 1.3) as Company's sales representative to promote and solicit, but not to conclude or accept, orders for the sale of the categories of pharmaceutical products listed in Schedule A (collectively, the "*Products*") as such schedule may be amended from time to time upon mutual agreement of the Parties in writing, to: (a) Prospective Clients on a non-exclusive basis; and (b) Prospective Clients it originates during the Term or that it originated prior to the Effective Date within the Territory and that are active customers (*i.e.*, they have purchased Products from the Company during the ninety (90) day period measured from the last invoice date) (collectively, "*Existing Clients*") on an exclusive basis, in each case that are located in North America (the "*Territory*").  Contractor hereby accepts such appointment.  Notwithstanding the foregoing and for clarity, (i) Company shall determine and control the Products that are offered to Contractor for marketing and promotion by Contractor under this Agreement, (ii) Company may, through its direct sales force or other sales representatives, promote, solicit, conclude and accept orders for the sale of

CB/PB

GOVERNMENT
EXHIBIT
670
1:24-cr-20255-WPD

SCSRELATIVITY_00002619657

Products to Prospective Clients (but not Existing Clients) in the Territory; (iii) nothing contained in this Agreement will prohibit Company and/or its other sales channels, acting directly or indirectly, from marketing and promoting Products to, soliciting orders from, and concluding sales to, Prospective Clients or Existing Clients (whether or not originated by Contractor) outside the Territory, even if such activities result in Products being sold within the Territory; and (iv) the Party or sales channel that has the first lead with respect to a Prospective Client that purchases Products shall have the exclusive right to market and promote such Products to such Prospective Client thereafter during the Term for so long as such client remains an active customer of Company (*i.e.*, its account with Company is not dormant for more than ninety (90) days measured from the last invoice date).

   1.2. <u>Scope of Authority</u>. Contractor shall not have authority to enter into any contract on behalf of Company, to otherwise legally bind Company or to perform any function not specifically authorized in this Agreement. Without limiting the generality of the foregoing, only Company can conclude and accept orders for Products. Contractor shall inform all Prospective Clients as to the limited nature of Contractor's authority under this Agreement.

   1.3. <u>Term</u>. The term of this Agreement shall begin on the Effective Date and, subject to early termination as provided in this Article 8 of this Agreement, continue for twelve (12) months (the "***Initial Term***"). This Agreement shall automatically renew for successive periods of twelve (12) months each (each, a "***Renewal Term***") unless a Party notifies the other Party of its desire to not renew at least sixty (60) days prior to the expiration of the Initial Term or the then-current Renewal Term, as the case may be. The Initial Term, together with any Renewal Terms are collectively referred to as the "***Term***."

**<u>Article 2 –Duties of Contractor</u>**

   2.1. Subject to the terms and conditions of this Agreement, Contractor shall use its best efforts to promote and solicit orders for the Products from Prospective Clients and Existing Clients within the Territory. The Parties shall cooperate in good faith on setting the prices for the Products; <u>provided</u>, <u>however</u>, that Company reserves the right to sell the Products at any price as may be determined by the Company in its sole discretion following discussions with Contractor and/or the Prospective Client or Existing Client, as applicable. Normally, Company will supply all quotations directly to the Prospective Client or Existing Client. In situations in which Company authorizes Contractor to provide a price quotation to a Prospective Client or Existing Client, Contractor shall provide the price quotation supplied by Company specifically for the Prospective Client or Existing Client and no other quotation. Alternatively, with Company's written consent, Contractor may provide price quotations to Prospective Clients and Existing Clients using Company's then current pricing and pricing guidelines to the extent available, which Company may change in its sole discretion at any time and from time to time, provided Company will endeavor to provide Contractor prior notice of any changes in such pricing and guidelines to the extent they have been provided to Contractor.

   2.2. In performing its duties under this Agreement, Contractor shall: (a) conduct its business in an ethical manner and in a manner that will reflect favorably on Company, the Products and their respective reputations; (b) conduct its business diligently, in good faith and consistent with such standards, policies and procedures of the Company,

SCSRELATIVITY_0002619657



-2-

including without limitation those regarding training and the use of Company materials (the "*Standards*") as may be amended from time to time by the Company upon written notice to Contractor, (c) identify potential leads among Prospective Clients for Products, (d) advise Company on marketing Products and on serving the needs of Prospective Clients and Existing Clients, (e) conduct its activities under this Agreement with due care in accordance with sound commercial principles; (f) comply with all applicable requirements of law including, without limitation, those requirements of law relating to competition; and (g) limit its statements and claims regarding the Products and Company's related services, including statements concerning performance, to those that are consistent with the Promotional Materials (as defined in Section 3.1).

2.3.    Contractor shall not make any warranties, representations or statements regarding Products except as expressly authorized by Company. All marketing materials and related written communications for Products used by Contractor or its Personnel (as defined in Section 6.2) must first be approved by Company in writing.

2.4.    Contractor shall have no authority to accept orders, bind Company to any contract, or create any liability or obligation to any third party, including any Prospective Client or Existing Client, on Company's behalf; provided, however, Contractor shall be permitted to input orders from customers directly into Company's electronic, computer-based information systems.

2.5.    Contractor shall pay all of its own costs and expenses incidental to Contractor's performance of its obligations under this Agreement, including, without limitation, travel, entertainment and telephone, and shall be solely responsible for the acts, salaries and expenses of sales Personnel or other employees engaged by Contractor to assist in Contractor's activities under this Agreement.  Contractor shall be responsible for all travel and maintenance costs associated with training conducted by Contractor.  In order to facilitate necessary communication, Contractor agrees to maintain telephone and facsimile lines, voicemail, email, and cellular telephones, all at Contractor's own expense.

2.6.    Risk of loss for all property furnished by Company to Contractor for the performance of Contractor's duties under this Agreement, including but not limited to Product samples and Promotional Materials, that are, at any time, in the possession or control of Contractor, shall be borne solely by Contractor, whether owned and/or delivered to Contractor by Company or a third party.  In the event that Contractor fails to deliver such property to Company on demand, Company may deduct the cost or value of such property from any payment due to Contractor under this Agreement and use any and all available remedies to recover such property or the value thereof.

2.7.    Contractor shall maintain policies of commercial general liability insurance that are appropriate and adequate to cover all risks with respect to any services Contractor provides to Company in connection with this Agreement, and shall provide proof thereof to Company in writing upon request.

2.8.    Contractor shall keep Company advised of complaints received from Prospective Clients and/or Existing Clients in any way related to Company or the Products or

SCSRELATIVITY_0002619657

-3-

regarding Contractor's activities on behalf of Company.  In addition, Contractor shall keep Company advised of Contractor's marketing and sales promotion activities in respect of the Products and shall:

2.8.1.   furnish Company with written reports, as reasonably requested by Company from time to time, detailing Contractor's activities under this Agreement; and

2.8.2.   furnish Company with written sales forecasts containing estimates of the potential sales of Products and with such other written reports, at such times and in such form as Company may require from time to time.

2.9.   Contractor shall discuss strategic matters relating to the solicitation of orders and contract negotiations with Company in advance and will act on Company's instructions relative thereto.

2.10.   Contractor shall provide each Prospective Client or Existing Client with prompt, efficient and satisfactory account services.  These services shall include: (a) acting as a liaison between the Prospective Client or Existing Client and the Company, when requested by the Company or the Prospective Client or Existing Client to act in such capacity, relating to matters such as order placement, contract negotiation, delivery, change orders, modifications, or pricing; and (b) discussing payment and collection problems with the Prospective Client or Existing Client when so requested by Company.

2.11.   Contractor shall not, directly or indirectly, do (or cause any third party to do) any one or more of the following: (a) enter into any representative, agency, distribution, sub-representative or sub-agency agreement or arrangement with respect to the Products or any services without Company's prior written consent; or (b) alter any Products, services or documents provided by Company.

## Article 3 - Duties of Company

3.1.   Company shall furnish Contractor, at Company's own expense, with reasonable quantities of non-proprietary sales aids, Product briefs, price lists, brochures, sales terms and conditions and similar literature and materials normally made available by Company on behalf of the Manufacturers to Company's other sales representatives and its own sales force with respect to the Products (collectively, the "***Promotional Materials***").

3.2.   Company shall advise Contractor as to, and provide Contractor with a written copy of, Company's Standards relevant to the sale of the Products.

3.3.   Company shall inform Contractor as promptly as is commercially practicable of Company's acceptance, rejection or, in appropriate cases, partial acceptance of a sales order solicited by Contractor.

3.4.   Company shall periodically review and discuss with Contractor the Sales (as defined in Schedule B) originated by Contractor and the portion of Gross Margin (as defined in Schedule B) payable to Contractor during each calendar quarter, as provided in Schedule B.



-4-

SCSRELATIVITY_0002619657

## Article 4 – Acceptance of Orders

Contractor shall submit to Company all purchase agreements and all related purchase orders, letters of credit and other contract and transaction documents for the purchase of Products (collectively, "***Contract Documents***") to the extent received by Contractor from any Prospective Client or Existing Client in the Territory.  All Contract Documents shall be in the form provided by Company or as negotiated by Company with the Prospective Client or Existing Client.  No Contract Documents shall be binding on Company unless and until Company delivers its written acceptance thereof to the Prospective Client or Existing Client, as applicable.  Company has the right to reject all or any portion of any order for Products solicited by Contractor (and all related Contract Documents) for any reason whatsoever.

## Article 5 – Compensation; Additional Commercial Terms

As Contractor's sole compensation for its activities under this Agreement, Company shall pay Contractor as set forth in Schedule B, which schedule also contains additional commercial terms as agreed by the Parties related to the provision of service fee statements, exclusions, channel conflicts, minimum net profit, uncollectible debts and Sales.

## Article 6 - Compliance

6.1.     Contractor and Company shall strictly comply with all laws, regulations and requirements applicable to the duties of Contractor or to the marketing or sale of Products, including, without limitation, Fraud and Abuse Laws (collectively, "***Health Care Laws***") as well as any applicable federal or state laws other than Health Care Laws that regulate the business practices of Contractor ("***Business Laws***").  For purposes of this Agreement, "***Fraud and Abuse Laws***" shall mean all laws, rules and regulations relating to false claims, fraud and abuse, fee-splitting, kickbacks or referrals, including, without limitation, the Medicare and Medicaid anti-kickback law (42 U.S.C. § 1320a-7b(b)) (the "***Anti-Kickback Statute***").  Contractor and Company acknowledge that they understand these requirements, and agree to remain educated and informed regarding such Health Care Laws and Business Laws relating to the services being provided by Contractor.

6.2.     Contractor and Company shall not do any of the following, and shall prohibit their employees, contractors, sales representatives, agents and any other persons acting on their behalves ("***Personnel***") from doing any of the following:

(a)     offer, provide, solicit or receive anything of value, including, without limitation, goods, services, cash or any other form of remuneration or gift, to or from any prescriber, health care professional or health care facility (including, without limitation, any Prospective Client or Existing Client) for the purpose of inducing the order or purchase of Products, the referral or generation of business to or for Contractor or Company or any of their affiliates, any Prospective Client or Existing Client, or as a reward for any such purchase, order or referral;

(b)     make or facilitate the making of any false or misleading statements concerning Company, Contractor, any Prospective Client, Existing Client, the Products or any



-5-

SCSRELATIVITY_00026 19657

other products or services of Company, Contractor, any Prospective Client, Existing Client or any of their respective affiliates, or billing or reimbursement for such Products or services;

(c)    facilitate or assist in the filing of any claim for Products that contains any false or misleading statements or omissions;

(d)    request, accept, solicit or encourage any order for Products from any Prospective Client or Existing Client, prescriber or other health care professional or facility known to have any financial relationship with Contractor, Contractor Personnel, Company, Prospective Clients, Existing Clients, any owner, employee, agent or contractor of Company or any Prospective Clients or Existing Clients, or any immediate family member of any such person, unless such relationship satisfies a safe harbor under the Anti-Kickback Statute; or

(e)    pay or receive any remuneration determined or based on orders for Products, or the generation of any business reimbursed under any federal health care program (as defined at 42 U.S.C. § 1320a-7b(f)), including, without limitation, Medicare, Medicaid, TRICARE, the Children's Health Insurance Program, and programs funded by Maternal and Child Health Block Grants or Social Services Block Grants ("*Federal Health Care Programs*").

6.3.    Contractor and Company shall implement effective compliance, training and education programs designed to ensure that all Contractor and Company Personnel are aware of and understand the principal Health Care Laws, and their duty to comply with all Health Care Laws and with this Article 6.  In addition, Contractor shall require all of its employees, agents, sales representatives and sub-contractors to annually review compliance training provided by Company.

**Article 7 - Representations of Contractor and Company**

Contractor and Company mutually represent and warrant that:

7.1.    Neither Contactor nor Company, nor any Contractor or Company Personnel nor any of Contractor's or Company's owners or principals: (a) has been sanctioned within the meaning of Social Security Act Section 1128A or any amendments thereof; (b) has been convicted of violating any Health Care Law or Business Law; (c) has been debarred, excluded or suspended from participation in any Federal Health Care Program; (d) has been the subject of a complaint filed by any federal or state enforcement agency related to the Health Care Laws or Business Laws; or (e) has engaged in any conduct that could give rise to sanctions, convictions, or violations of any of the Health Care Laws or Business Laws.

7.2.    Contractor is free to enter into this relationship with Company and by doing so, is not violating and will not violate any agreement or understanding, written or unwritten, with any third party.  Company is free to enter into this relationship with Contractor and by doing so, is not violating and will not violate any agreement or understanding, written or unwritten, with any third party.

7.3.    It has and shall maintain in effect at all times all licenses, permits, and authorizations required from all federal, state, and local authorities necessary to or for the performance of its obligations under this Agreement.

-6-

SCSRELATIVITY_0002619657

7.4.     It shall notify the other Party in writing within three (3) calendar days in the event any representation or warranty made by it and set forth in this Agreement shall no longer be true, correct or complete.

7.5.     Company is duly formed and validly existing as a limited liability company in the State of Delaware.  Contractor is duly formed and validly existing to do business in its state of organization.  Contractor shall provide such notice of good standing as may be reasonably requested by Company from time to time.

7.6.     The execution, delivery and performance of this Agreement and the activities contemplated by this Agreement have been duly authorized by all necessary action and do not contravene, or constitute a material default under, any provision of applicable law or regulation or of any material agreement, judgment, injunction, order, decree or other instrument binding upon it or any of its shareholders, directors, officers, employees or agents, or its organizational and other constitutive documents.

7.7.     The individuals executing this Agreement on behalf of the Parties are authorized to enter into transactions on behalf of and contractually bind their respective Parties.

### Article 8 – Termination

Notwithstanding the Initial Term and any Renewal Term prescribed for in this Agreement, this Agreement may be terminated by either Party in accordance with this Article 8.

8.1.     Either Party may terminate this Agreement for convenience and without cause upon giving one hundred twenty (120) days' prior written notice to the other Party. If Contractor elects to terminate this Agreement without cause, SCS may determine in its sole discretion to not have Contractor continue to perform the Services during the remainder of the compensation period defined below and all contacts of Contractor become unrestricted accounts for SCS to solicit directly.  Unless SCS makes such election, Contractor shall use its best efforts to continue performing the Services and SCS shall continue compensating Contractor for all orders accepted by SCS through the compensation period.

8.1.1.  Without Cause Compensation Period

If SCS terminates without cause, SCS will compensate Contractor as follows:

1.     For 12 months after termination, issue commission payments as a % of GM equal to the rate in effect at the time of termination

2.     For an additional 6 months after the initial 12 month period, issue commission payments of as a % of GM equal to 2/3 of the rate in effect at the time of termination

3.     After completion of the compensation period, all contacts of Contractor become unrestricted accounts for SCS to solicit directly.



SCSRELATIVITY_00002619657

-7-

If WW terminates without cause, SCS will compensate Contractor for a period of 6 months after termination as follows:

    1.   Issue commission payments as a % of GM equal to the rate in effect at the time of termination

8.2.    Either Party may terminate this Agreement for cause upon written notice to the other Party if the other Party materially breaches this Agreement and such breach is not cured within thirty (30) days after written notice from the terminating Party is received by the other Party.

8.3.    Either Party may terminate this Agreement upon written notice if:

(a)    the other Party or any of its affiliates, shareholders or officers is or becomes subject to any judgment, indictment, settlement, civil monetary penalty or exclusion relating to any Health Care Law or Business Law;

(b)    the other Party fails to comply with any Health Care Law in connection with this Agreement or the provision of services under this Agreement; or

(c)    the other Party files a voluntary petition for bankruptcy, is declared bankrupt in an involuntary proceeding, files for a plan under any bankruptcy law, places its affairs in the hands of a receiver or makes a transfer for the benefit of creditors, or performs any other act based upon or due to inadequate credit position.

(d)    If either party becomes subject to such conditions, it shall have the right to cure such condition within 3 months to avoid termination of this agreement.

8.4.    This Agreement shall also be subject to termination as mutually agreed by the Parties in writing.

8.5.    All outstanding obligations owed to a Party by/from the other Party under this Agreement shall survive the expiration or earlier termination of this Agreement until performed or discharged.  In addition, Articles/Sections [5, 6, 8.7, 9, and 14 to 32][1] shall survive the expiration or earlier termination of this Agreement for any reason in accordance with their respective terms.

8.6.    Upon the termination of this Agreement, whether in accordance with this Article 8 or upon the expiration of its Term in accordance with Article 1, the Parties agree that the compensation terms and conditions as set forth in Article 5 and <u>Schedule B</u> will survive the termination of this Agreement and any and all Existing Clients who continue to place orders and receive invoices as a result of Contractor's efforts will continue to be compensated to Contractor in the manner and form described in <u>Schedule B</u> for a minimum period of one hundred twenty (120) days after termination of this Agreement.

---

[1] *Note: List to be updated prior to execution.*



SCSRELATIVITY_0002619657

8.7.     Upon the termination or expiration of this Agreement, Contractor shall promptly return or cause the return of all quantities of Promotional Materials in the possession, custody or control of Contractor or any Contractor Personnel, as well as any Products (including any samples of Products), Product specifications and proprietary material concerning Products then in Contractor's or its Personnel's possession.  Contractor shall specifically provide to Company all customer contracts and orders, files and business records created by Company or based on records or reports created by Company (whether written, graphical or computer generated), and records generated by Company concerning this Agreement; provided that Contractor may retain copies of such records as are necessary to document its relationship with Company for purposes of reporting its income for taxation.

### Article 9 - Confidentiality.

9.1.     During the Term and at all times thereafter, Contractor shall not disclose to any third party any Confidential Information (as defined in Section 9.4) that may be revealed to Contractor or that may otherwise be obtained or developed by Contractor during the course of Contractor's engagement under this Agreement.  The foregoing shall not prohibit disclosures: (a) made to Prospective Clients or Existing Clients or Contractor Personnel who have a "need to know" the Confidential Information for the sole purpose of soliciting orders for the Products in the Territory and who have signed non-disclosure agreements that impose obligations on such Prospective Clients, Existing Clients or Contractor Personnel that are substantially similar to Contractor's obligations under this Article 9; or (ii) legally compelled to be made by any requirement of law or pursuant to any legal or investigative proceeding before any court, or governmental or regulatory authority, agency or commission so long as the Contractor gives Company prior written notice of such compelled disclosure and a reasonable opportunity to oppose such compelled disclosure or otherwise obtain a protective order or other similar determination or undertaking.

9.2.     During the Term and at all times thereafter, Contractor shall not use for its direct or indirect benefit, or for the direct or indirect benefit of any third party, any Confidential Information, except that Contractor may use the Confidential Information during the Term to the extent strictly necessary to promote and solicit orders on behalf of Company for Products in the Territory.

9.3.     Contractor shall be responsible for informing all persons receiving copies of Confidential Information from it of the provisions of this Article 9 and for the observance by such persons of such provisions.  Upon Company's request, and upon the expiration or earlier termination of this Agreement, Contractor shall promptly return and cause the return to Company of all materials in Contractor's or its Personnel's possession or control that contain Confidential Information, with the exception of this Agreement.

9.4.     As used in this Agreement, the term ***Confidential Information*** means any of the following: (a) all technical, financial, commercial or other data and information pertaining to the Products, Company or any of its affiliates that is not readily available to the general public through no fault or omission of Contractor or any of its officers, employees or agents, including without limitation, the pricing of the Products and all data and information relating to inventions, discoveries, processes, methods, formulae, algorithms, computer programs

SCSRELATIVITY_0002619657

or instructions (whether in source code, object code or other form), software, specifications, documentation, drawings, flow charts, diagrams, costs, customer lists, business studies, market research and business procedures; (b) the terms and conditions of this Agreement; and (c) any data and information provided by or on behalf of any Manufacturer or other third party to Company or any of its affiliates under an obligation or reasonable expectation of confidentiality. Failure to mark any information as confidential or proprietary shall not adversely affect its status as Confidential Information.

9.5.    In the event that either Party shall breach any of the provisions of this Article 9, or in the event that any such breach is threatened by either Party, in addition to and without limiting or waiving any other remedies available to the injured party at law or in equity, such Party shall be entitled to immediate injunctive relief in any court, domestic or foreign, having the capacity to grant such relief, to restrain any such breach or threatened breach and to enforce the provisions of this Article 9.  Both Parties acknowledge and agree that there is not an adequate remedy at law for any such breach or threatened breach and, in the event that any action or proceeding is brought seeking injunctive relief, neither Party shall use as a defense thereto that there is an adequate remedy at law.

## Article 10- Agreements Not to Solicit, Employ or Disparage.

10.1.    Agreement Not to Solicit Business.  Neither Party shall knowingly solicit or promote any Products or services to current, active clients/accounts of the other Party that such other Party or its agents or representatives have originated before first obtaining the express written consent of such other Party.  For purposes of this Section 10.1, a client/account is active if it is not dormant for more than ninety (90) calendar days measured from the last invoice date).

10.2.    Agreement Not to Solicit Personnel.  Contractor covenants and agrees that it and its owners, officers, directors, members, managers, employees and agents will not, during the Term and for a period of one (1) year after the termination of this Agreement for any reason, directly or indirectly engage, hire, employ or solicit any employee, agent, representative or independent contractor of the Company, or entice or induce (or attempt to entice or induce) any such employee, agent, representative or independent contractor of the Company to terminate or not renew its, his or her retention by or relationship with the Company.

10.3.    Agreement Not to Disparage.  Each Party agrees that following the termination of this Agreement for any reason, it and its owners, officers, directors, members, managers, employees and other agents will not, either directly or indirectly, disparage or attempt to disparage the other Party or the other Party's owners, officers, directors, members, managers, employees and other agents.

## Article 11 - Restrictions on Contractor.

11.1.    During the Term, Contractor shall not, directly or indirectly, knowingly solicit orders for Products from any Prospective Client that has already been assigned to, or formally originated by, another contractor of the Company without Company's express written consent.

SCSRELATIVITY_0002619657

-10-

11.2.    During the Term, and for a period of one (1) year following the termination or expiration of this Agreement, Contractor shall not, directly or indirectly, except as reasonably necessary to perform Contractor's duties under this Agreement: (i) interfere with, disrupt, or attempt to interfere with or disrupt, any professional, contractual or business relationship of Company or any client of Company with any Prospective Client or Existing Client; or (ii) enter into any agreement or arrangement with any client or agent of Company to perform services substantially similar to the services of Contractor under this Agreement or to act as account or sales representative for such parties.

11.3.    If either Party breaches the terms of Section 11.2, the duration of such restrictions shall be extended for an additional period of time equal to the period of time during which such breach or breaches occurred, including, without limitation, the duration of any litigation with respect thereto.

## Article 12 - Status of Contractor as an Independent Contractor

Contractor shall be deemed an independent contractor, and nothing herein shall be construed to establish between Contractor and Company, or between any Contractor Personnel and Company, the relationship of employer-employee, partnership or joint venture.  During the Term, Contractor agrees to devote such working time, attention, energy, and skill as Contractor deems necessary to perform its duties under this Agreement.  Company shall not have the power to verse and supervise Contractor with respect to the means and manner in which Contractor performs functions hereunder.  Contractor will be responsible for all state and federal taxes and assessments relating to all services provided under the terms of this Agreement, including federal income tax, federal social security payments, all payroll taxes, state unemployment insurance payments, disability insurance and workers compensation payments.  Contractor further waives all claims to any benefits arising under or with respect to any profit sharing or pension plan maintained by Company.  Subject to the express limitations contained in this Agreement, this Agreement does not limit the right of Contractor to perform services for any other party or be employed by another party.

## Article 13 - Relationship of Contractor and Company to Manufacturers

Contractor shall not have any authority under this Agreement to order Products from Manufacturers, approve or submit purchase orders for Products to Manufacturers, or otherwise commit Company to purchase Products from Manufacturers.  Contractor acknowledges that Company is a distributor for Manufacturers and does not manufacture or control the delivery of inventory, but relies on third parties for such delivery.  Company may modify, without notice, the Products covered by this Agreement for any reason.

## Article 14 - Indemnification

14.1.    Contractor shall indemnify and hold harmless Company and its affiliates and any of their respective shareholders, directors, officers, employees and agents from and against any and all third party claims, suits and proceedings (and all judgments, settlements, fines, penalties and expenses including, without limitation, reasonable attorneys' fees, expenses and disbursements incurred in respect of such claims, suits and proceedings) that arise from,

-11-

SCSRELATIVITY_0002619657

relate to, or are connected with (a) any act or omission of Contractor or any of its shareholders, directors, officers, employees or agents, (b) any breach or inaccuracy of any representation or warranty made by Contractor in this Agreement, or (c) any breach of any duty or obligation to be performed by Contractor under this Agreement.

14.2.   Company shall indemnify and hold harmless Contractor and its affiliates and any of their respective shareholders, directors, officers, employees and agents from and against any and all third party claims, suits and proceedings (and all judgments, settlements, fines, penalties and expenses including, without limitation, reasonable attorneys' fees, expenses and disbursements incurred in respect of such claims, suits and proceedings) that arise from, relate to, or are connected with (a) any act or omission of Company or any of its shareholders, directors, officers, employees or agents, (b) any breach or inaccuracy of any representation or warranty made by Company in this Agreement, or (c) any breach of any duty or obligation to be performed by Company under this Agreement; provided Company shall not provide indemnification under this Section 14.2 with respect to any such third party claims, suits or proceedings that result from or relate to any statements, representations or warranties made by Contractor regarding the Products, which representations or warranties were not specifically authorized in writing by Company or the Manufacturers, as applicable.

### Article 15 - Applicable Law/Jurisdiction/Arbitration/Venue

This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, exclusive of choice of law rules. Any dispute, claim or controversy arising out of or relating to this Agreement or breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in accordance with the laws of the State of Maryland for agreements made in and to be performed in that state. The arbitration shall be administered by JAMS, pursuant to its Streamlined Arbitration Rules and Procedures. The dispute shall be heard by three (3) arbitrators in Cambridge, Maryland. The decision of the arbitrators shall be final and conclusively determinative of the dispute between the Parties, non-appealable and the award of the arbitrators may be entered as a final judgment in any court of record in the United States. Each Party reserves its right to seek equitable relief in the form of injunction to prevent any breach, threatened or actual, by the other Party of any of the provisions or Sections of this Agreement, including Article 9. Proper venue for any such action shall be in Cambridge, Maryland before the state or federal court with appropriate jurisdiction.

### Article 16 – Assignment

Neither Party shall assign this Agreement or any of its rights, title, interests or obligations hereunder without the prior written consent of the other Party, which consent shall not be unreasonably withheld, conditioned or delayed.

### Article 17 – Waiver

Failure by Contractor or Company to insist upon enforcement of or to enforce any rights hereunder shall not constitute a waiver of the right of either Party to insist upon strict

SCSRELATIVITY_0002619657

-12-

compliance with the provisions hereof.  Any waiver made with respect to this Agreement must be in writing and signed by the Party waiving such rights.

### Article 18 – Severability

If any term or provision of this Agreement or application thereof to any circumstance shall to any extent be held to be invalid or unenforceable, the remainder of this Agreement and the application of such term or provision to circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby, and each term or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

### Article 19 - Change in Law

If any laws, rules, regulations, or payor policies or procedures now existing or promulgated hereafter are interpreted by judicial decision, a regulatory agency, payor or outside legal counsel in such a manner as to indicate that this Agreement or the transactions contemplated under this Agreement are, or create a substantial risk of being, in violation of such laws or regulations, then Contractor and Company shall negotiate in good faith to amend the terms of this Agreement as necessary to address the applicable concerns while preserving the underlying economic and financial arrangements to the extent possible.  If the Parties are unable to agree upon such amendments to the reasonable satisfaction of Contractor and Company, then either Party may terminate this Agreement upon at least thirty (30) days advance written notice to the other Party.

### Article 20 - Binding Nature

The provisions of this Agreement shall inure to the benefit of and be binding upon Company and its respective successors, legal representatives, and assigns. This Agreement is a personal services contract and the rights, obligations and interests of Contractor hereunder may not be sold, assigned, or otherwise transferred without the prior written consent of Company.  An assignment by Company due to corporate reorganization shall not be deemed to be an assignment under Article 16 or this Article 20.

### Article 21 – Notice

Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and hand-delivered or sent by nationally recognized overnight courier, or by certified or registered mail, first class, return receipt requested, to the addresses first listed below.  Either Party may change its address for notice purposes by notifying the other Party of such change of address within five (5) days after the change of address, such notice to be in writing.

If to Company:          Safe Chain Solutions, LLC
                        822 Chesapeake Drive
                        Cambridge, Maryland 21613
                        Attn: [          ]

If to Contractor:       [Worldwide Sales]

-13-

SCSRELATIVITY_0002619657

```
[              ]
[              ]
Attn: [          ]
```

### Article 22 - Entire Agreement

This Agreement sets forth the entire agreement between the Parties with respect to the subject matter hereof, and supersedes any and all prior agreements or understanding between the Company and Contractor, whether written or oral, fully or partially performed relating to any or all matters covered by and contained or otherwise dealt with in this Agreement.

### Article 23 – Amendment

No modification, change or amendment of this Agreement or any of its provisions shall be valid unless in writing and signed by the Party against whom such claimed modification, change or amendment is sought to be enforced.

### Article 24 – Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

### Article 25 - Further Assurances or Documentation

If Company reasonably determines that any other reasonable agreements or documents are necessary to express or enforce the intent of this Agreement, Contractor will execute them upon reasonable request.

### Article 26 – Headings

The Schedules attached to this Agreement are incorporated into this Agreement by reference. The section headings set forth in this Agreement are for the purposes of convenience only, and shall have no bearing whatsoever on the actual content or interpretation of this Agreement.

### Article 27 - No Third Party Beneficiary

Nothing expressed or implied in this Agreement is intended or will be construed to confer upon or give to any person, other than the Parties, any rights or remedies under or by reason of this Agreement.

### Article 28 - Attorneys' Fees

If any action or proceeding is brought by one Party against the other under this Agreement, the prevailing Party will be entitled to recover from the losing Party its reasonable costs and attorneys' fees incurred in such action or proceeding, including any costs of appeal.



-14-

GX 670.0014

### Article 29 - Program Debarment, Suspension and Exclusion

In addition to the other representations and warranties provided by the Parties herein, each Party hereby represents to the other that neither it nor any of its Personnel performing services under this Agreement are currently, or has at any time been, suspended, excluded, or debarred from or sanctioned by any federally funded health care program, including, without limitation, Medicare or Medicaid.  The Parties represent that each has obtained this information regarding its current Personnel and shall obtain this information regarding any future Personnel performing services under this Agreement.  Each Party agrees that it shall notify the other Party immediately if it becomes aware of any such exclusion, debarment, or sanction of any of its Personnel during the Term.

### Article 30 - Use of Name

Neither Party may use the other Party's name, marks, codes, drawings, URLs or email addresses or specifications in any advertising, promotional efforts (including the Promotional Materials) or any publicity of any kind without the prior written permission of such other Party.  Except as set forth in this Agreement, none of Contractor or any of its Personnel may represent or hold themselves out as being Personnel of the Company, nor shall Contractor or such Personnel be permitted to refer to Company as its/their exclusive or non-exclusive distributor of Products, in either case without the prior written permission of the Company.

### Article 31 – Gender

All terms in the singular shall be deemed to include the plural and vice versa; all terms in the masculine gender shall be deemed to include the feminine and vice versa.

### Article 32 - Record Availability

If applicable and to the extent required by the federal Social Security Act, until the expiration of five (5) years after the furnishing of services pursuant to this Agreement, the Parties shall make available, upon written request by the Secretary of Health and Human Services, the Comptroller General or any of their duly authorized representatives, this Agreement and any books, documents and records of the Parties that are necessary to certify the nature and the extent of the services provided pursuant to this Agreement.

### Article 33 – Force Majeure

None of Company or any of its affiliates shall be liable to Contractor for Company's delay or failure to perform its obligations under this Agreement or its obligations to any Prospective Clients or Existing Clients in the Territory when/if such delay or failure is due to the existence of any condition or the occurrence of any event beyond the reasonable control of Company or any such affiliate.  Such conditions or events shall include, without limitation, labor disturbances (*e.g.*, strikes and lockouts), transportation delays, materials shortages, acts of governmental or of civil authorities, civil commotion, force majeure, acts or war, embargoes and any other cause or causes, whether or not of like kind or character, beyond Company's or any of its affiliates' reasonable control.  Upon the occurrence and during the continuance of any such condition or event, Company or the applicable affiliate shall have the right to allocate available

-15-

quantities of Products (to the extent then in its possession) or available resources to render services in such a manner as it, in its sole discretion, shall deem fair and reasonable.

*[remainder of this page intentionally left blank]*

-16-

SCSRELATIVITY_0002619657

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**COMPANY:**

SAFE CHAIN SOLUTIONS, LLC

By: _____

Print Name: _____Charles Boyd_____

Title: _____President / Partner_____

**CONTRACTOR:**

[WORLDWIDE SALES]

By: _____

Print Name: _____ADAM BROSIUS_____

Title: _____PRESIDENT_____

-17-

SCSRELATIVITY_0002619657

**SCHEDULE A**

**PRODUCTS**

Contractor may market and promote ALL pharmaceutical products and categories of pharmaceutical products on behalf of the Company in the Territory excluding: sales of pharmaceutical products that are most commonly stocked prescription medications used by retail pharmacies.

The foregoing SHALL NOT restrict contractor from engaging in the sales of other categories of products including, but not limited to prescription products that are commonly referred to as "specialty products," "single NDC products," "single NDC kits," or any topical creams, patches or NSAID's.

#49495011 v2

B-1

**SCHEDULE B**

**COMPENSATION; OTHER BUSINESS ARRANGEMENTS**

Allocation of Gross Margin / Payment of Service Fees

Contractor shall be entitled to receive from Company each week during the Term (each Thursday assuming Thursday is a business day in Cambridge, MD, otherwise on the next business day), a service fee equal to **75%** of Gross Margin (as defined below) (each such payment, a "*Service Fee*"). Company shall be entitled to retain **25%** of Gross Margin. Notwithstanding anything to the contrary contained herein and notwithstanding any adjustments required hereunder, under no circumstances shall Company ever retain less than **20%** of Gross Margin.

In the event that Company and Contractor agree to increase the cost of a product in the system visible to sales representatives ("Show Cost"), then the Company shall receive 40% and the Contractor shall receive 60% of the difference between the Show Cost and the actual cost.

"*Gross Margin*" shall mean cash actually collected by Company from clients in the Territory [on balances paid in full] during the prior calendar week resulting from Sales, minus (a) the costs of goods sold for the quantity of such Products sold as a result of such Sales; and credit card expenses incurred by Company and associated with or otherwise applicable to such Sales.

"*Sales*" shall mean sales of Products to Prospective Clients and Existing Clients resulting from orders originated by Contractor and accepted by Company during the Term, provided the customer relationship is the result of Contractor's direct solicitation of the sale during the Term, and provided further that order means a purchase order or other authorization to have manufactured and ship Products to the client, and not a master purchase document under or in respect of which such purchase orders or other authorizations are issued.

Unless otherwise agreed by the Parties, all payments due to Contractor hereunder shall be made by bank wire transfer to the bank account of Contractor provided to Company in writing or by check made payable to Contractor for delivery to the address set forth in the introductory paragraph of the Agreement, or such other place as may be designated from time to time by Contractor in writing to the Company. All Service Fees shall be paid in United States Dollars. Any taxes attributable to Service Fees paid to Contractor under this Agreement shall be paid by and shall be the sole responsibility of Contractor.

Service Fee Statements;  Exclusions;  Channel Conflicts

Company shall furnish Contractor with a service fee statement with each Service Fee payment. Subject to the next paragraph, such service fee statement shall constitute a final accounting of each amount described unless, within forty-five (45) days after Contractor's receipt of such service fee statement, Contractor shall furnish written notice to Company stating that such Service Fees or the transactions to which they relate are incorrectly described therein and specifying in reasonable detail the error(s) claimed to be contained in the applicable statement. Any dispute that cannot be amicably resolved by the Parties shall be resolved pursuant to the dispute resolution provisions contained in Article 15 of the Agreement.

SCSRELATIVITY_0002619657

#49495011 v2

B-2

Notwithstanding anything to the contrary in the Agreement or this <u>Schedule B</u>, Contractor shall not be entitled to any Service Fee for any Products with respect to which Company pays a refund or issues a credit to the applicable client for any reason. If Company pays any such refund or issues any such credit, then Contractor shall refund to Company any Service Fee (or that portion of any Service Fee), as determined on a pro rata basis, previously received with respect to the applicable Products. Alternatively, Company shall have the right to deduct any Service Fee previously paid to Contractor for the sale of such Products from any Service Fees that are later payable by Company to Contractor.

In the event Company becomes aware of any sales channel conflicts (such as competing claims of sales representatives for the right to solicit an order from the same prospect/client or for payment of service fees to competing sales channels, including Company's direct sales force, on the same order), Company shall have the right to resolve the conflict in any manner it determines in its sole discretion. Without limiting the generality of the foregoing, Company will seek to understand the perspective of the persons or parties involved in the conflict and in resolving the conflict may, among other things, require service fees to be split (on a basis determined by the Company) between or among the competing persons or parties, or assign the prospect/client to one of the conflicting channels. Company's decisions in resolving such sales channel conflicts shall be final and binding on all relevant persons or parties, including Contractor.

<u>Minimum Net Profit</u>

The Parties shall review the Sales originated by Contractor and the Gross Margin/Sales Fees payable each calendar quarter to confirm that Company is achieving therefrom a minimum net profit of 3.5% per calendar quarter. If Company's net profit is less than 3.5% in any calendar quarter, the Parties shall promptly discuss in good faith a new allocation of Gross Margin as between Company and Contractor that is expected to result in Company achieving a net profit of at least 3.5% per calendar quarter thereafter.

<u>Uncollectible Debts</u>

Contractor shall be responsible for a percentage equal to its then in effect service fee, and Company shall be responsible for the remaining percentage, of all uncollectible accounts receivable related to Sales net of any recoveries.

Company shall carry accounts receivable insurance for uncollectible debts as it relates to all qualifying client accounts. For clarity, Contractor's responsibility for uncollectible debts shall be net of any insurance proceeds received by Company in respect of same.

<u>Other Commercial Terms Related to Sales</u>:

Company and Contractor shall monitor and regulate inventory levels for the Products.

Company shall conduct credit checks of Prospective Clients at Company's own expense.

#49495011 v2

B-3

SCSRELATIVITY_0002619657

As between Company and Contractor, Company is responsible for all wire and ACH fees associated with Sales.

Company shall be responsible for all inbound shipping charges (from the Manufacturer of the Products to Contractor or directly to the client).

Company shall be responsible for all credit and collection costs associated with each client account (*e.g.*, fees payable to a collections agency to recover amounts owing to Company).

Contractor shall be responsible for all credit card fees up to a maximum of 3% of total credit card revenue.

#49495011 v2

B-4