**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-CR-20255-WPD**

**UNITED STATES OF AMERICA**

**v.**

**PATRICK BOYD and**
**CHARLES BOYD,**
      **Defendants**.

_____/

## CHARLES BOYD'S NOTICE OF SUBMISSION TO PROBATION OFFICE

Charles Boyd, through undersigned counsel, files this Notice of Submission to Probation Office. Charles Boyd's Comments and Objections to the Pre-Sentence Report (attached) were submitted on today's date to United States Probation Officer Aundrea Caldwell.

Dated: February 13, 2026

**By: s/ Bruce A. Zimet, Esq.**
Florida Bar No. 0225053
**BRUCE A. ZIMET, P.A.**
1555 Palm Beach Lakes Blvd., Suite 1400
West Palm Beach, FL 33401
Tel: (561) 508-7741
Tel: (954) 764-7081
Email: BAZ@BruceAZimetLaw.com
*Counsel for Charlie Boyd*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: February 13, 2026

**<u>By: s/ Bruce A. Zimet, Esq.</u>**
Florida Bar No. 0225053
**BRUCE A. ZIMET, P.A.**
1555 Palm Beach Lakes Blvd., Suite 1400
West Palm Beach, FL 33401
Tel: (561) 508-7741
Tel: (954) 764-7081
Email: BAZ@BruceAZimetLaw.com
*Counsel for Charlie Boyd*

**BAZ** **BRUCE A. ZIMET**
ATTORNEY AT LAW

1555 Palm Beach Lakes., Suite 1400
West Palm Beach FL 33401

633 South Federal Highway, 6th Floor
Ft. Lauderdale, FL 33301

Palm Beach: 561-508-7741
Broward: 954-764-7081
Fax: 954-760-4421
Email: BAZ@BruceAZimetLaw.com

February 13, 2026

Aundrea Caldwell
U.S. Probation Officer
United States Courthouse
299 East Broward Blvd. Suite 409
Ft. Lauderdale, FL 33301
Aundrea_caldwell@flsp.uscourts.gov

RE: USA v. Charles Boyd (#24-CR-20255-WPD)

Dear Ms. Caldwell,

Please find Charles Boyd's comments and objections to the Draft Pre-Sentence Investigation Report ("PSR") received on January 13, 2026. Sentencing is scheduled before Judge Dimitrouleas on March 13, 2026 in Ft. Lauderdale. Charles Boyd and his brother, Patrick Boyd, will be sentenced on the same date. A third defendant, Adam Brosius, was previously sentenced. For purposes of simplicity and efficiency, Charles Boyd's PSR comments will be presented in conjunction with the numbered PSR paragraphs.

Based on the PSR presentation, Charles Boyd anticipates that Patrick Boyd's PSR will have similar components to Charles Boyd's PSR, particularly relating to Related Cases, Offense Conduct and particular non-individualized portions of Offense Level Computation. To the extent that Patrick Boyd's PSR comments and objections apply to Charles Boyd, Charles Boyd adopts Patrick Boyd's comments and objections.

## PARAGRAPH 1:
## CHARGE(S) and CONVICTION(S)

The paragraph accurately includes the charges and convictions. However, the paragraph does not include the special verdicts that the jury returned as to Count One: Conspiracy to Deliver for Introduction into Interstate Commerce Misbranded Drug with the Intent to Defraud or Mislead, and as to Count Four: Conspiracy to Possess, Transport or Traffic in a Pre-Retail Medical Product Involving False or Altered Labeling or Documentation. A copy of the Jury Verdict Form is attached for your convenience (Exhibit "A").

Specifically, as to Count One, the jury found that Charles Boyd had been proved to have conspired to introduce or deliver for introduction into interstate commerce misbranded drugs with the intent to defraud or mislead. The jury did not find that Charles Boyd had conspired to introduce into interstate commerce adulterated drugs with the intent to defraud or mislead. The jury also did

<u>not</u> find that an object of the conspiracy charged in Count One was defrauding the FDA. (D.E. 213).

As to Count Four, the jury did find that Charles Boyd conspired to knowingly possess, transport, or traffic in a pre-retail medical product involving false or altered labeling or documentation (including documentation relating to origination or shipping). The jury <u>did</u> <u>not</u> find that Charles Boyd had conspired to knowingly and falsely make or alter the labeling or documentation (including documentation relating to origination or shipping) of a pre-retail medical product. (D.E. 213 at 2).

Charles Boyd requests that the complete special verdicts, as described above, be included in Paragraph One, as that information will relate to issues involving variances, disparity of sentences and §3553(a) factors.

### PARAGRAPH TWO

Charles Boyd requests that Paragraph Two be updated to include that Charles Boyd filed a Response in Opposition to the Government's Motion for a Preliminary Order of Forfeiture in the amount of $21,850,000 on January 19, 2026 (D.E. 259). The Government replied to Charles Boyd's Response on January 21, 2026 (D.E. 261).

### PARAGRAPH NINE:
### RELATED CASES

The one case that is included in the PSR as a related case is that of <u>United States v. Lazaro Roberto Hernandez</u>, Case No. 22-CR-60129-Singhal. Hernandez received a 180-month period of incarceration, concurrent with Case No. 19-cv-04259-DPG. Hernandez's 2019 case is also a related case involving HIV drugs. In proper context, Hernandez received a 180-month sentence for <u>two</u> HIV diversion cases. Hernandez was associated with one of the five source companies that provided misbranded HIV drugs to Safe Chain, through a company known as Gentek.

Charles Boyd requests that Paragraph Nine be supplemented to include that Hernandez was sentenced in the 2022 case with a Criminal History of II with a total offense level of 36 (after 3-point acceptance of responsibility reduction). His conviction involved distribution of $232.8 million worth of HIV drugs in Case No. 22-cr-60129-AHS (D.E. 111 at 2). Hernandez had been convicted of armed robbery at age 17 and had served 135 months incarceration for cocaine trafficking. Case No. 22-cr-60129-AHS. (D.E. 92 at 53).

<u>Hernandez</u> is not the only related case. Charles Boyd requests that the following cases be included in Paragraph Nine:

1. <u>Gilead Sciences, Inc. v. Safe Chain Solutions, LLC et al.</u>
   Case No. 21-cv-4106-AMD (JAM)(E.D.N.Y.)
2. <u>Gilead Sciences, Inc v. AJC Medical Group, Inc. et al.</u>
   Case No. 20-cv-24523-AMC (S.D.Fla)



3. <u>Gilead Sciences, Inc. v. Khaim et al.</u>
   Case No. 24-cv-04259-NCM (E.D.N.Y.)

4. <u>United States v. Hernandez</u>
   Case No. 19-cr-20674-DPG (S.D.Fla.)

5. <u>United States v. Eladio Vega</u>
   Case No. 19-cr-20674-DPG (S.D.Fla.)

6. <u>United States v. Mohammad Salemi</u>
   Case No. 19-cr-20674-DPG (S.D.Fla.)

7. <u>United States v. Ralhan</u>
   Cased No. 23-505-01-MAS (D.N.J.)

8. <u>United States v. Diamanstein</u>
   Case No. 23-0051-MAS (D.N.J.)

9. <u>United States v. Herrera</u>
   Case No. 23-cr-20264-Gayles (S.D.Fla.)

10. <u>United States v. Aminov</u>
    Case No. 23-cr-00110 (S.D.N.Y.)

11. <u>United States v. Khaimov,</u>
    Case No. 22-cr-00020-PGG (S.D.N.Y.)

12. <u>United States v. Khaim</u>
    Case No. 20-cr-00580-AMD (E.D.N.Y.)

13. <u>United States v. Boris Arencibia</u>
    Case No. 19-cr-20674- DPG (S.D.Fla.)

14. <u>United States v. Jose Armando Rivera Garcia</u>
    Case No. 19-cr-20674-DPG (S.D.Fla.)

15. <u>United States v. Stephen Costa</u>
    Case No. 19-cr-20674-DPG (S.D.Fla.)

16. <u>United States v. Joles</u>
    Case No. 19-cr-20674-DPG (S.D.Fla.)

## <u>PARAGRAPHS ELEVEN THRU FORTY-EIGHT:</u>
### <u>OFFENSE CONDUCT</u>

 The Offense Conduct set forth in the PSR appears to have been authored by the Government and fails to include significant facts and information. Charles Boyd will include in his Sentencing Memorandum a Statement of Facts. Charles Boyd will request that the Court instruct the Probation Office to incorporate Charles Boyd's Statement of Facts into the PSR. Charles Boyd's Statement of Facts will be germane to applications for variances and 18 U.S.C. §3553(a) factors.

Page 3



**PARARAGRAPHS FORTY-THREE AND FORTY-FOUR:**
**OBSTRUCTION OF JUSTICE**

The Obstruction of Justice PSR paragraphs relating to Charles Boyd assert that in a civil deposition taken on June 16, 2023, "Charles Boyd testified, under oath, that he believed Peter Khaim and the individual using the alias "King Kimchi" were different people and that he had never communicated with King Kimchi. That testimony was directly contradicted by contemporaneous emails and text messages between Charles Boyd and Khaim". (PSR at 14). The PSR asserts that a Wall Street Journal article from March 30, 2022, announced that "the Department of Justice had opened a criminal investigation into a prescription drug trafficking network that included Safe Chain". Id.

Charles Boyd's civil deposition was taken in the case of Gilead Sciences Inc. v. Safe Chain Solutions LLC et. al. The Government has repeatedly represented that the Gilead civil case was separate and apart from its Safe Chain criminal investigation. There is no evidence that there was any relationship between the civil deposition and any criminal investigation. There would have been no reason for the existence of a criminal investigation to have been credibly communicated to any media outlet. In fact, Department of Justice regulations preclude any such disclosures.

Not only could Charles Boyd's civil deposition testimony not obstruct what presumably was a confidential Government investigation, his testimony was not perjurious as asserted in the PSR. Charles Boyd's actual testimony from his civil deposition includes the following pertinent parts:

Q. And for Boulevard, do you have – did you have a sense at the time who the principal of Boulevard was?

A. I believe that Peter was one of the owners of Boulevard.

Q. You say one of the owners. Did you have a sense there were other owners?

A. No. Just knew Peter from Boulevard.

Q. And you never knew Peter's last name before the lawsuit, correct?

A. I did not.

Q. Okay. Did you speak with Peter on the phone?

A. I did.

Q. And you exchanged test messages with him?

A. I did.

Q. Okay. There's also an email address associated with Boulevard called King – or the person using it called himself or herself King Kimchi, correct?

A. That is correct.

Q. Was King Kimchi Peter, in your understanding?

A. In my understanding. They were two separate people.



Page 4

Q. Okay. Is it your understanding that that person's legal name was King Kimchi?

A. that was my understanding, yes.

Q. You thought their first name was King and their last name was Kimchi?

A. Correct.

Q. Did you ever inquire about the – about their unusual name?

A. No, that's not appropriate.

Q. Okay. Do you know anyone else named King?

A. I do not.

Q. Okay.  What was your understanding of King Kimchi's role at Boulevard?

A. My understanding that King Kimchi handled all of their compliance T3 documents.

Q. Was King Kimchi involved at the beginning of your relationship with Boulevard?

A. I don't believe so.

                    …

Q. Okay. All right. Did you speak with King Kimchi on the phone.

A. I did not.

Q. Did you ever have a sense of where King Kimchi was sitting?

A. No.

Q. Did you ever have a sense that King Kimchi was an employee of Boulevard, an owner of Boulevard, a consultant, or something else?

A. Either an employee or a consultant.

(Charles Boyd June 15, 2023 Deposition at 73 – 76).

   Charles Boyd objects to the PSR conclusion that Charles Boyd's civil deposition testimony constituted perjury or obstruction of justice. Charles Boyd never testified that he never communicated with King Kimchi. There is insufficient evidence to establish that Charles Boyd did not believe in 2020 that Peter from Boulevard and King Kimchi were separate individuals. Charles Boyd requests that the civil deposition transcript excerpt be added to the PSR.

Page 5


BRUCE A. ZIMET
ATTORNEY AT LAW

**PARAGRAPH FORTY-NINE AND FIFTY:**
**ROLE ASSESMENT**

The PSR inaccurately describes Charles Boyd as having been a member of a conspiracy to "purchase adulterated and misbranded drugs" and being part of an "adulterated and misbranded fraud scheme." The jury's verdict distinguished between Charles Boyd's culpability involving misbranded drugs and adulterated drugs. Accordingly, the PSR should not conclude that Charles Boyd's was a culpable participant involving adulterated drugs. The testimony at trial was clear, and the jury determined, that while there were instances of wrong pills in bottles, Charles Boyd, or for that matter Safe Chain, received sealed bottles of HIV drugs and were not aware of any wrong pills in bottles until after the bottles had been delivered to pharmacies and subsequently opened.

**PARAGRAPH(S) FIFTY-TWO TO FIFTY-FOUR:**
**VICTIM IMPACT**

Charles Boyd is unable to respond to the Victim Impact paragraphs since no information has been provided. Charles Boyd does request that the Victim Impact section include the fact that Safe Chain, Patrick Boyd, and Charles Boyd entered into a Settlement Agreement with Gilead that totaled $2,730,111.31. Included in the Gilead settlement was $1,925,160.35 from Safe Chain, $576,922.66 from Charles and Christi Boyd's Investment Account, and two Charles Boyd life insurance policies of $76,513.84 and $24,895.47. (Settlement Agreement attached as Exhibit "B").

**PARAGRAPH(S) FIFTY-FIVE TO FIFTY-SEVEN:**
**ADJUSTMENT FOR OBSTRUCTION OF JUSTICE**

Charles Boyd objects to the PSR adjustment for Obstruction of Justice based on Charles Boyd's alleged denial that he communicated with King Kimchi and that he believed Peter from Boulevard and King Kimchi were separate individuals. The transcript of Charles Boyd's deposition testimony includes Charles Boyd believing that Peter Khaim from Boulevard and King Kimchi were two separate individuals. There is insufficient evidence that Charles Boyd believed that Peter from Boulevard and King Kimchi were the same person. Charles Boyd never testified that he did not communicate with King Kimchi.

**PARAGRAPHS FIFTY-NINE TO SEVENTY-SEVEN:**
**OFFENSE LEVEL COMPUTATION**

Charles Boyd is unaware of the Probation Office's Offense Level Computation as to Co-Defendant Adam Brosius. However, without conceding the accuracy of that computation, Charles Boyd's Offense Level Computation should not be different than Brosius' computation. Obviously, Brosius would receive a three-level adjustment based on acceptance of responsibility that Charles Boyd, by going to trial, would not receive. Charles Boyd's initial objection to the Offense Level Calculation is that absent the issue of Obstruction of Justice, Charles Boyd's Offense Level



computation should be identical to Brosius' pre-acceptance of responsibility Offense Level Computation.

**PARAGRAPH SIXTY-FIVE:**
**SPECIFIC OFFENSE CHARACTERISTICS**

Charles Boyd objects to the two-point enhancement based on ten or more victims. The PSR fails to identify any victims, let alone ten victims.

**PARAGRAPH SIXTY-SIX:**
**LOSS OF $92,800,000**

Charles Boyd objects to the $92,800,000 loss amount as not accurately reflecting either actual or intended loss.

**PARAGRAPH SIXTY-NINE:**
**RISK OF DEATH OR SERIOUS BODILY INJURY**

Charles Boyd objects to the two-point enhancement based on conscious or reckless risk of death or serious bodily injury. There is insufficient evidence or facts to support this enhancement.

**PARAGRAPH SEVENTY:**
**VICTIM RELATED ENHANCEMENT**

Charles Boyd objects to the four-point enhancement based on the victims of the offense being vulnerable. There is insufficient evidence or facts to support this enhancement.

**PARAGRAPH SEVENTY-ONE:**
**ADJUSTMENT FOR ROLE IN THE OFFENSE**

Charles Boyd objects to the two-point enhancement for abuse of position. That enhancement is not applicable together with the 2B1.1(b)(8)(B) enhancement.

**PARAGRAPH SEVENTY-THREE:**
**OBSTRUCTION OF JUSTICE**

Charles Boyd objects to the four-point enhancement as previously discussed. Charles Boyd did not falsely testify concerning lack of communication with King Kimchi and there is insufficient evidence that Charles Boyd, prior to the Gilead lawsuit, did not believe that Peter from Boulevard and King Kimchi were separate individuals.

**PARAGRAPH SEVENTY- FOUR:**
**ADJUSTED OFFENSE LEVEL**

Based on Charles Boyd's objections to the Offense Level Computations the Adjusted Offense Level of fifty-three is inaccurate.



### PARAGRAPH SEVENTY-SEVEN:
### TOTAL OFFENSE LEVEL

The "treated" Offense Level of forty-three is inaccurate based on Charles Boyd's objections.

### PARAGRAPH ONE HUNDRED AND TWENTY-SIX:
### FACTORS THAT WARRANT A SENTENCE OUTSIDE OF THE ADVISORY
### GUIDELINE SYSTEM

Numerous factors support variances from the "life" exposure resulting from the PSR guideline calculations, including unwarranted disparities, nature and circumstances of the offense, history and characteristics of Charles Boyd as well as other 18 U.S.C. §3553(a) factors. Charles Boyd requests that Paragraph 126 be amended to recognize that various variances are potentially warranted.

### CONCLUSION

Thanking you in advance for your consideration. A copy of Charles Boyd's comments and objections is being provided to the Government. Should you have any questions, please contact me at (954) 629-8437.

Sincerely,

*Bruce A. Zimet*

Bruce A. Zimet



<span style="color:red">EXHIBIT "A"</span>

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 24-CR-20255-DIMITROULEAS/HUNT

UNITED STATES OF AMERICA,

vs.

CHARLES BOYD,

                Defendant.

_____/

### VERDICT FORM

We, the jury, unanimously find as follows as to the charges against Defendant Charles Boyd:

1. As to Count 1, conspiracy to introduce or deliver for introduction into interstate commerce adulterated and misbranded drugs with the intent to defraud or mislead, and to defraud the FDA,

      _____✓_____                 _____
        GUILTY                           NOT GUILTY

If your verdict is GUILTY, please answer the following:

We, the jury, unanimously find the Government proved the following object(s) of the conspiracy:

      _____    Introducing or delivering for introduction into interstate commerce adulterated drugs with the intent to defraud or mislead.

      _____✓_____    Introducing or delivering for introduction into interstate commerce misbranded drugs with the intent to defraud or mislead.

      _____    Defrauding the FDA.

2. As to Count 2, the shipment of misbranded Biktarvy on or about January 21, 2021,



‾‾‾‾‾‾‾‾‾‾✓‾‾‾‾‾‾‾‾‾       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
GUILTY                              NOT GUILTY

3.    As to Count 3, the shipment of misbranded Biktarvy on or about February 23, 2021,

‾‾‾‾‾‾‾‾‾✓‾‾‾‾‾‾‾‾‾       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
GUILTY                              NOT GUILTY

4.    As to Count 4, conspiracy to traffic in pre-retail medical products with false documentation,

‾‾‾‾‾‾‾‾✓‾‾‾‾‾‾‾‾‾       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
GUILTY                              NOT GUILTY

If your verdict is GUILTY, please answer the following:

We, the jury, unanimously find the Government proved the following object(s) of the conspiracy:

‾‾‾‾‾‾‾‾‾‾‾‾ Knowingly and falsely making or altering the labeling or documentation (including documentation relating to origination or shipping) of a pre-retail medical product.

‾‾‾‾‾✓‾‾‾‾‾ Knowingly possessing, transporting, or trafficking in a pre-retail medical product involving false or altered labeling or documentation (including documentation relating to origination or shipping).

5.    As to Count 5, conspiracy to commit wire fraud,

‾‾‾‾‾‾‾‾✓‾‾‾‾‾‾‾‾‾       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
GUILTY                              NOT GUILTY

6.    As to Count 6, wire fraud involving the wire transfer of $400,000 to Gentek on or about August 6, 2020,

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾       ‾‾‾‾‾‾‾‾‾✓‾‾‾‾‾‾‾‾‾
GUILTY                              NOT GUILTY

7.    As to Count 7, wire fraud involving the email transmission from Adam Brosius to

Patrick Boyd and Charles Boyd on or about October 30, 2020,

$\checkmark$

_____          _____
GUILTY                              NOT GUILTY

8.    As to Count 8, wire fraud involving the email transmission from Safe Chain to its

pharmacy customer on or about April 13, 2021,

$\checkmark$

_____          _____
GUILTY                              NOT GUILTY

So Say We All  _____          _____

Date: 10/29/2025

EXHIBIT "B"

# SETTLEMENT AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into and is effective among and between Gilead Sciences, Inc. and Gilead Sciences Ireland UC, and Gilead Sciences, LLC (together "Gilead"), on the one hand, and Defendants Safe Chain Solutions, LLC, Patrick Boyd, and Charles Boyd (collectively, "Safe Chain") on the other.  Gilead is referred to herein as "Plaintiffs."  Gilead and Safe Chain are each referred to herein as a "Party" and collectively as the "Parties."

# RECITALS

WHEREAS, on July 22, 2021, Gilead filed an anti-counterfeiting action captioned *Gilead Sciences, Inc., et al. v. Safe Chain Solutions, LLC, et al.*, No. 21-cv-04106-AMD-RER in the United States District Court for the Eastern District of New York (the "Court") against certain defendants ("the Action"), including Safe Chain;

WHEREAS, on July 23, 2021, the Court entered an Asset Freeze Order and Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction against, *inter alia*, Safe Chain (Minute Entry of July 23, 2021, Dkt. No. 19);

WHEREAS, on July 29, 2021, Safe Chain agreed to the entry of a preliminary injunction in connection with the Action and the Court entered the preliminary injunction (Dkt. Nos. 25, 28);

WHEREAS, on March 18, 2022, the Parties mediated in good faith, and at arms-length, under the supervision of then-Magistrate Judge Ramon E. Reyes, Jr.;

WHEREAS, on January 13, 2023, Safe Chain filed counterclaims in the Action against Gilead (Dkt. No. 899);

WHEREAS, on May 3, 2023, Gilead filed its Sixth Amendment Complaint, the currently operative complaint in the Action (Dkt. No. 1056);

WHEREAS, on July 14, 2023, Gilead moved to dismiss Safe Chain's counterclaims against Gilead (Dkt. Nos. 1141-1143);

WHEREAS, the Parties again mediated in good faith, and at arms-length, under the supervision of Magistrate Judge Joseph A. Marutollo;

WHEREAS, Safe Chain denies any liability to Gilead in the Action and has denied, and continues to deny, the claims raised by Gilead in the Action; and

WHEREAS, Gilead denies any liability to Safe Chain relating to Safe Chain's counterclaims and has denied, and continues to deny, the claims raised by Safe Chain in Safe Chain's counterclaims; and

WHEREAS, no Party admits the validity of any claims or defenses in the Action or Safe Chain's counterclaims, the events described therein, or otherwise; and

WHEREAS, Gilead wishes to settle on these terms because it is being paid essentially all of Safe Chain's assets and is obtaining a complete and permanent injunction; and

WHEREAS, Safe Chain wishes to settle and resolve all claims solely in order to avoid the time, expense, inconvenience, and uncertainties of litigation; and

WHEREAS, it is the mutual intention of the Parties to resolve the Action, pursuant to the terms set forth below;

NOW, THEREFORE, the Parties hereby execute this Agreement to reflect and memorialize the terms and conditions of their settlement, and hereby affirm that, in consideration of these promises and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, covenant and agree as follows:

## AGREEMENT

1.     **Permanent Injunction.**  Gilead and Safe Chain agree to execute and be bound by the Consent Judgment and Permanent Injunction attached as <u>Exhibit C</u>, which provides for, *inter alia*, the dismissal of the Action against Safe Chain, including Charles Boyd and Patrick Boyd, with prejudice ("**Consent Judgment and Permanent Injunction**").  Within three (3) business days of the Effective Date of this agreement, Gilead will file and seek entry of the Consent Judgment and Permanent Injunction with the Court.  The Parties waive any rights to appeal the entry of the Consent Judgment and Permanent Injunction.  The terms of the Consent Judgment and Permanent Injunction are incorporated into this Agreement as if fully set forth herein.

2.     **Settlement Payment.**

a.     Safe Chain shall pay to Gilead a total sum of two million, seven hundred and thirty thousand, one hundred and eleven dollars and thirty one cents ($2,730,111.31) (the "Settlement Amount") for full resolution of this matter to the attorney trust account of Gilead's attorneys, Patterson Belknap Webb & Tyler ("PBWT") in the manner described in the remaining paragraphs of this Section.  This sum is calculated based on the Parties' understanding of the current cash value of the below-described accounts.  The payment to Gilead of the current cash value of the below-described accounts, net of any transaction or broker fees associated with liquidating those assets, shall fully resolve this matter between the parties, regardless of whether that value is higher or lower than the dollar value listed above.  Gilead shall, however, receive all of the funds in the frozen accounts even if the accounts increase in value.

b.     Pursuant to the Consent Judgment and Permanent Injunction (as defined above), Univest Bank and Trust Co., as depository for some of the funds identified on Table 1 of <u>Exhibit A</u>, will immediately be directed to release all funds in the frozen account ending in

4019 (the "Univest Account"), with a current balance of $1,925,160.35, to Gilead in partial satisfaction of the Settlement Amount.

c.  In addition, Wells Fargo Advisors, as depository for some of the funds identified on Table 1 of Exhibit A, will immediately be directed to liquidate all holdings and then release all funds in the frozen account ending in 6080 (the "Charles & Christi Boyd Investment Account"), with a current balance of $576,922.66, to Gilead in partial satisfaction of the Settlement Amount.

d.  In addition, BayVanguard Bank (alternatively known 1880 Bank), as depository for some of the funds identified on Table 1 of Exhibit A, will immediately be directed to release all funds in the frozen account ending in 4995 (the "Patrick Boyd Checking Account"), with a current balance of $275.16, to Gilead in partial satisfaction of the Settlement Amount.

e.  In addition, Queenstown Bank of Maryland, as depository for some of the funds identified on Table 1 of Exhibit A, will immediately be directed to release all funds in the frozen account ending in 3201 (the "Dorchester Holdings LLC Account"), with a current balance of $48,985.41, to Gilead in partial satisfaction of the Settlement Amount.

f.  In addition, New York Life Insurance Company will immediately be directed to liquidate life insurance policy Numbers 24 174 858 and 24 174 966, with current net cash values, respectively, of $76,513.84 and $77,358.42, and the policy Number 794414459, with a current net cash value of $24,895.47, and then release the net cash values to Gilead in partial satisfaction of the Settlement Amount.

g.  Each bank, brokerage house, financial institution, or life insurance company acting as depositor or holder for the accounts identified on Table 1 of Exhibit A and described in paragraphs (b)-(f) above will release and remit, together, the entire value held in each account, net of any transaction or broker fees associated with liquidating those assets, to Gilead in full satisfaction of the Settlement Amount.

h.  All payments required by this Agreement must be made to Gilead via wire, ETF transfer, or check to the escrow account of its attorneys, PBWT (the "**Settlement Account**") pursuant to wire transfer instructions attached as Exhibit B.

i.  This Agreement shall be held in escrow until receipt of the above listed funds from all of the transfers described in the foregoing subparagraphs (b)-(f).  Within three (3) business days of PBWT's confirming of receipt of the above listed funds, this Agreement shall be released from escrow and given full and binding effect as of the date on which it is released from escrow ("Agreement Escrow Release Date").  The Parties will fully cooperate to secure the release of the funds in each of the accounts to Gilead.

j.  The dollar values listed for each account in the foregoing subparagraphs (a) – (f) are for informational purposes only based on the Parties' current understanding of the present cash value of each account described therein.  The parties understand that those values may fluctuate from time to time due to market conditions beyond their control.

Thus, for the avoidance of doubt, the Parties agree that Safe Chain shall have fully satisfied its obligation to pay the Settlement Amount pursuant to this paragraph 2 once the entire cash value of the accounts identified in Table 1 of Exhibit A at the time those assets are liquidated, net of any transaction or broker fees associated with liquidating those assets, has been transferred to Gilead pursuant to the foregoing subparagraphs (g) and (h).

3.      **Payment Default**.  If Safe Chain obstructs or otherwise impedes the transfers described above in Section 2 such that the transfers are not timely made and resulting in a default, or if the balances in any of the accounts are less than the balances as listed on Table 1 of Exhibit A, Gilead may send written notice of non-payment to Safe Chain in accordance with paragraph 9 of this Agreement.  Safe Chain will have thirty (30) calendar days from the date of such notice to cure the default, time being of the essence. If the default is not timely cured, the entire unpaid portion of the Settlement Amount shall immediately become due and owing and Gilead will be immediately and automatically entitled to a judgment against each of Safe Chain Solutions, LLC, Patrick Boyd, and Charles Boyd, jointly and severally, for violation of this agreement in the entire unpaid portion of the Settlement Amount owed by Safe Chain plus interest of 1% per month, with Safe Chain Solutions, LLC, Patrick Boyd, and Charles Boyd waiving all defenses and objections they may have to Gilead's application for this judgment. Gilead shall be entitled further to its actual attorneys' fees and investigators' fees for obtaining and collecting this portion of the judgment and shall be entitled to an *ex parte* asset freeze in the unpaid amount.  This Agreement will remain in full force and effect and continue to be effective notwithstanding that any of Safe Chain Solutions, LLC, Patrick Boyd, or Charles Boyd becomes the subject of any bankruptcy or insolvency proceeding.

4.      **Breach**.  In addition to the foregoing remedy for nonpayment, in the event of any violation of this Agreement or the terms of the Consent Judgment and Permanent Injunction, Gilead may take any and all actions available under this Agreement or permitted under any applicable law to collect on the joint and several obligations and liabilities of Safe Chain Solutions, LLC, Patrick Boyd, or Charles Boyd, enforce this Agreement, or enforce the Consent Judgment and Permanent Injunction.  For the avoidance of doubt, nothing contained in this Agreement requires Gilead to pursue Safe Chain Solutions, LLC before pursuing Charles Boyd or Patrick Boyd, who are jointly and severally liable for the Settlement Amount.

5.      **Discovery Rights/Cooperation.**  Safe Chain shall use their best efforts to cooperate in good faith with Plaintiffs with respect to the Action, and be truthful at all times with respect to questions asked of them and information sought from them by Plaintiffs in connection with the Action.  Without limiting Safe Chain's agreement to cooperate in good faith with reasonable requests by Plaintiffs, the Parties specifically agree:

a.      Safe Chain will provide documents reasonably requested by Plaintiffs, to the extent they have not already produced the documents in the Action.  To the extent that Safe Chain possess documents that are subject to confidentiality restrictions (other than those imposed by any Protective Order entered in the Action), they will use their best efforts in good faith to obtain relief from said restrictions.

b.      During the pendency of the Action, including any appeals, Safe Chain agrees to cooperate with Plaintiffs and Plaintiffs' legal counsel in connection with Plaintiffs' claims

4

against the remaining defendants in the Action (and any defendants added to the Action in the future) by being truthful in all matters about which they are asked and of which they have knowledge. Safe Chain's cooperation, without limitation, may include (i) responding in a timely fashion to formal and informal requests for documents and information, (ii) participating in telephone calls and meetings to truthfully and completely answer questions, (iii) reviewing documents and information, and (iv) providing sworn testimony in whatever form that Plaintiffs require, including for use in support of court filings, at deposition and/or at trial.

c.      Safe Chain shall be entitled to have their own legal counsel represent them in any actions reasonably requested by Plaintiffs pursuant to paragraphs 5a and 5b.  The fees of Safe Chain's legal counsel shall be the sole responsibility of Safe Chain.

d.      This Agreement is expressly not conditioned upon the substance of any information or testimony Safe Chain may provide, and cannot be construed to require Safe Chain to testify to or otherwise provide information that is not true or that is misleading.  Subject to paragraph 12, should Safe Chain provide false or misleading testimony, provide Plaintiffs with information they know to be untrue, or materially breach subsection (a) or (b) of this paragraph 5, Plaintiffs may void this Agreement, and all provisions thereof, including the release granted to Safe Chain in paragraph 8.

e.      For the avoidance of doubt, nothing in this Paragraph or in this Agreement requires Safe Chain to waive its Fifth Amendment privilege or attorney-client privilege at any time, or provide any information to Gilead that is subject to any legal privilege, including but not limited to any joint defense/common interest material.

6.      **Effective Date.**  The "**Effective Date**" of this Agreement is the date on which all Parties have executed this Agreement and the Consent Judgment and Permanent Injunction.

7.      **Audit.**  Following entry of the Consent Judgment and Permanent Injunction, to ensure Safe Chain's compliance with the Consent Judgment and Permanent Injunction, Gilead shall have the right, upon at least thirty days prior written notice, to have an independent firm audit, at Gilead's expense, Safe Chain's records of purchases and sales of all products purchased or sold by Safe Chain after the date of the Consent Judgment.  The independent firm shall not be permitted to provide any information discovered during any such audit to Gilead unless it relates to (a) Gilead-branded products; or (b) Safe Chain's lack of compliance with the Consent Judgment and Permanent Injunction.  Gilead's right to demand such an audit shall not be exercised more than once in any twelve-month period.

8.      **Mutual Releases.**

a.      Upon entry of the Consent Judgment and Permanent Injunction, except for the duties, responsibilities, and obligations which are set forth in this Agreement, Gilead, on behalf of itself and its respective officers, directors, owners, employees, former employees, parent and subsidiary entities, affiliated entities, predecessors, successors, assigns, agents, attorneys, and representatives (collectively, the "Plaintiffs Releasors"), hereby releases Safe Chain and its respective officers, directors, owners, employees, former employees,

parent and subsidiary entities, affiliated entities, predecessors, successors, assigns, agents, and representatives, Charles Boyd, and Patrick Boyd (collectively, the "Safe Chain Releasees") from any and all claims, causes of action, or demands of any nature whatsoever, anticipated or unanticipated, known or unknown at this time or at any time prior to the date hereof, existing from the beginning of the world through the date of this Agreement and arising from or relating to the Action, including but not limited to all claims that are asserted or that could have been asserted in the Action, and any of the Parties' respective rights therein.

b.      However, nothing in this Settlement Agreement is intended to or shall be construed to release any other Defendant in the Action or any other person or entity other than the Safe Chain Releasees.  For avoidance of doubt, the foregoing release does not release any of Safe Chain's customers, suppliers, trading partners, brokers, or independent sales representatives, nor may any of those individuals and/or entities use this release as a defense against any claim brought by Gilead against them.

c.      Upon entry of the Consent Judgment and Permanent Injunction, except for the duties, responsibilities, and obligations which are set forth in this Agreement, the Safe Chain Releasees, on behalf of themselves and their predecessors, successors, assigns, agents, and representatives hereby release the Plaintiffs Releasors and their attorneys from any and all claims, causes of action, or demands of any nature whatsoever, anticipated or unanticipated, known or unknown at this time or at any time prior to the date hereof, existing from the beginning of the world through the date of this Agreement and arising from or relating to the Action, including but not limited to all claims that are asserted or that could have been asserted in the Action, and any of the Parties' respective rights therein.

9.      **Notices.**  All notices required or permitted to be provided hereunder shall be afforded to the respective Parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary), or internationally recognized overnight courier as follows or to such other addresses or recipients designated by a Party by written notice from time to time:

If to Gilead:

Geoffrey Potter, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Email:  gpotter@pbwt.com and CounterfeitGileadMedications@pbwt.com and anticounterfeiting@gilead.com

If to Safe Chain or Charles Boyd or Patrick Boyd:

Charles Boyd
Patrick Boyd
Safe Chain Solutions

6

822 Chesapeake Drive
Cambridge, MD 21613
Email: CharlesB@Safechain.com
            PatB@Safechain.com

*With a copy to:*

August J. Matteis, Jr.
William E. Copley
Matthew S. Krauss
William E. Jacobs
Weisbrod Matteis & Copley PLLC
3000 K Street NW, Suite 275
Washington, DC 20007
Email: amatteis@wmclaw.com
            wcopley@wmclaw.com
            mkrauss@wmclaw.com
            wjacobs@wmclaw.com

10.    **Costs.**  Each of the Parties shall bear its own costs, attorneys' fees, and other fees incurred in connection with the Action and this Agreement.

11.    **Choice of Law.**  This Agreement shall be construed and governed by the laws of the State of New York, without regard to conflicts of law principles thereof.

12.    **Consent to Jurisdiction.**  The Parties consent to the jurisdiction of the United States District Court for the Eastern District of New York for any adjudication, application, action, suit or proceeding necessary to enforce the terms of this Agreement and waive any and all objections they may have in such enforcement proceeding to the laying of venue in such court, that such court is an inconvenient forum for such enforcement proceeding, or that such court does not have personal jurisdiction over them in such enforcement proceeding.

13.    **Severability.**  The language of this Agreement has been approved by each of the Parties.  The language of this Agreement shall be construed as a whole according to its fair meaning.  In the event that any provision or portion of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, the remainder of this Agreement shall be valid and enforceable and continue in full force and effect between the Parties, just as if the provision held to be illegal, unenforceable, or void had never been included in this Agreement, and the provision held to be illegal, unenforceable, or void shall be changed or interpreted so as to best accomplish the objectives of such provision within the limits of applicable law or court decisions.

14.    **Entire Agreement.**

a.    This Agreement constitutes a single written contract that expresses the entire agreement and understanding concerning the subject matter between the Parties and supersedes and replaces all prior communications, negotiations, understandings, proposed

7

agreements, or agreements, whether written or oral concerning the Action.   All understandings, representations and agreements heretofore had with respect to this Agreement concerning the Action are merged into this Agreement, which alone fully and completely expresses the agreement of the Parties.

b.      Each Party acknowledges and warrants that no Party, nor any attorney, agent, or representative of any Party, has made any promise, representation, or warranty whatsoever, expressed or implied, written or oral, not contained herein concerning the subject matter hereof to induce that Party to execute this Agreement.

c.      Each Party acknowledges and warrants that he or it has not executed this Agreement in reliance on any promise, representation, or warranty not expressly set out in this Agreement.

15.     **No Oral Modification.**  This Agreement may only be amended in writing, signed by authorized representatives of the Parties.

16.     **Binding Nature of the Agreement.**  This Agreement is and shall be binding upon, and shall inure to the benefit of, the predecessors, successors, heirs, and assigns of all Parties to the extent permitted by law.

17.     **Headings.**  The headings contained in this Agreement are inserted for convenience, identification, and/or reference only, shall not affect the interpretation or meaning of this Agreement or any provision contained herein, and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Agreement or any provision contained herein.

18.     **Interpretation.**    Each party hereto agrees that this Agreement shall not be construed or interpreted for or against any party as the drafter thereof since both Parties have participated in its preparation.

19.     **Counterparts.**    This Agreement may be executed in counterparts, including electronically, and as of the Effective Date each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.  This Agreement may be executed on varying dates, and a PDF of the executed Agreement shall have the same force and effect as a hard copy of the original.

20.     **Voluntary Execution of Agreement.**  This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties hereto.  The Parties acknowledge that:  They have read this Agreement; they have been represented in the preparation, negotiation and execution of this Agreement by legal counsel of their own choice; they understand the terms and consequences of this Agreement and of the releases it contains; and they are fully aware of the legal and binding effect of this Agreement.

21.     **Authority.**  Each individual executing this Agreement represents and warrants that he/she has the authority to do so and that execution and delivery of this Agreement has been duly and validly authorized by the Party on whose behalf he/she is signing.  Each Party releasing claims herein represents and warrants that no other entity has any interest or right in or to such claims.

22.     **Waiver.**  The failure of a Party to object to, or a waiver by any Party of, one or more breaches or violations of this Agreement shall not constitute a waiver or limitation upon the right of such Party to object to, or operate or be construed as a waiver or estoppel of, any other breach or violation of this Agreement.  No waiver by any Party of any breach or of any right under this Agreement shall be valid unless in writing and signed by an authorized representative of such Party.

23.     **Final Accord and Satisfaction**.  When executed and delivered by all Parties, this Agreement is intended to be final and binding between the Parties hereto and is further to be effective as a full and final accord and satisfaction between the Parties hereto as to any dispute involved in the Action, and each Party expressly relies on the finality of this Agreement as a substantial, material factor inducing the Party's execution of this Agreement.

*[remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have executed this Agreement on the respective dates set forth below.

GILEAD SCIENCES INC.


Dated: _____     By:     _____


                             Name: _____


                             Title: _____


GILEAD SCIENCES IRELAND UC


Dated: _____     By:     _____


                             Name: _____


                             Title: _____


GILEAD SCIENCES, LLC.


Dated: _____     By:     _____


                             Name: _____


                             Title: _____

10

SAFE CHAIN SOLUTIONS, LLC

Dated: 2/19/2024                    By: _____

                                   Name: Charles Boyd

                                   Title: Founder & CEO

PATRICK BOYD

Dated: _____            Signature: _____

CHARLES BOYD

Dated: 2/19/2024                   Signature: _____

11

## EXHIBIT A

Table 1: Bank Accounts

| Bank Name | Account Title | Account Number Ending In | Balance (Current) |
|---|---|---|---|
| Univest Bank and Trust Co. | Equitable Trust Account | 4019 | $1,925,160.35 |
| Wells Fargo Advisors | Charles & Christi Boyd Investment Account | 6080 | $576,922.66 |
| BayVanguard Bank (1880 Bank) | P. Boyd personal checking Account | 4995 | $275.16 |
| Queenstown Bank of Maryland | Dorchester Holdings LLC Account | 3201 | $48,985.41 |
| **TOTAL** | | | $2,551,343.58 |

Table 2: Life Insurance Policies

| Policy Holder | Insurance Company | Policy Number | Current Cash Surrender Value |
|---|---|---|---|
| Charles Boyd | New York Life Insurance | 24174858 | $76,513.84 |
| Charles Boyd | New York Life Insurance | 794414459 | $24,895.47 |
| Patrick Boyd | New York Life Insurance | 24174966 | $77,358.42 |
| **TOTAL** | | | $178,767.73 |

12

**EXHIBIT B**

| | |
|---|---|
| Bank: | Citibank, N.A.<br>Private Banking Division<br>153 East 53th Street<br>New York, NY 10022 |
| ABA Routing No.: | 021000089 |
| Account No.: | 54371288 |
| Swift #: | CITIUS33 |
| Account Title: | Patterson Belknap Webb & Tyler LLP Attorney Trust Account-IOLA |
| Reference: | Gilead-Safe Chain Settlement |

13

**<u>EXHIBIT C</u>**


(Consent Judgment and Permanent Injunction)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
```
GILEAD SCIENCES, INC., *et al.*,                     :

                              Plaintiffs,            :          Case No. 21-cv-4106-AMD-JAM

                                                     :

v.                                                   :

                                                     :

SAFE CHAIN SOLUTIONS, LLC, *et al.*,                 :

                                                     :

                              Defendants.            :
```
------------------------------------------------------------- x
```

## CONSENT JUDGMENT AND PERMANENT INJUNCTION
## <u>AS TO SAFE CHAIN SOLUTIONS, LLC, PATRICK BOYD, AND CHARLES BOYD</u>

On consent of Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead

Sciences, LLC (together, "Gilead" or "Plaintiffs") and Defendants Safe Chain Solutions, LLC,

Patrick Boyd, and Charles Boyd (collectively, "Safe Chain"), and pursuant to Fed. R. Civ. P.

54(b), it is hereby ORDERED, ADJUDGED, and DECREED:

1.      Safe Chain, and their predecessors, successors, agents, and assigns, or any other

person in active concert and participation with them, is enjoined from importing, purchasing,

selling, distributing, marketing, or otherwise using in commerce in the United States any Gilead

Products (as defined below), including authentic products, or assisting, aiding or abetting any

other person or business entity in engaging in or performing any of the activities referred to in

this paragraph.

2.      The "Gilead Products" are defined as all products manufactured by or sold by

Gilead or its subsidiaries in the United States, including but not limited to all products bearing

anywhere any of the Gilead Marks (as defined below), whether on the product itself or any of its packaging.

3.     The "Gilead Marks" include the following:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| GILEAD | 3251595 | June 12, 2007 |
|  | 2656314 | December 3, 2002 |
| GSI | 3890252 | December 14, 2010 |
| BIKTARVY | 5344455 | November 28, 2017 |
| DESCOVY | 4876632 | December 29, 2015 |
| DESCOVY FOR PREP | 5912591 | November 19, 2019 |
| 9883 | 5467392 | May 15, 2018 |
|  | 5636131 | December 25, 2018 |
|  | 5906177 | November 12, 2019 |
|  | 5030567 | August 30, 2016 |
|  | 5154303 | March 7, 2017 |
| TRUVADA | 2915213 | December 28, 2004 |
| GENVOYA | 4797730 | August 25, 2015 |
| ATRIPLA | 3276743 | August 7, 2007 |
| RANEXA | 3094007 | May 16, 2006 |
| VOSEVI | 5259592 | August 8, 2017 |
| STRIBILD | 4263613 | December 25, 2012 |
|  | 6031751 | April 14, 2020 |
| SOVALDI | 4468665 | January 21, 2014 |
|  | 5018106 | August 9, 2016 |
| 7977 | 4585257 | August 12, 2014 |

4.     Nothing in this Consent Judgment and Permanent Injunction prohibits Charles Boyd and/or Patrick Boyd from purchasing any Gilead Product, as defined above, for their own personal medical use (not for resale) in accordance with all applicable laws or owning less than 5% of any public company.

5.     Safe Chain, on behalf of themselves and their officers, directors, owners, predecessors, successors, assigns, agents, and representatives hereby assign to Plaintiffs any and all claims for damages and restitution against all other Defendants in the Action and/or third

parties, permissive or mandatory, asserted or unasserted, anticipated or unanticipated, known or unknown at this time or at any time prior to the date hereof, existing from the beginning of the world through the effective date of the Settlement Agreement executed between Safe Chain and Gilead (the "Settlement Agreement") and arising from or relating to Safe Chain's purchase or sale of Gilead Products.

6.     Following entry of the Consent Judgment and Permanent Injunction, to ensure Safe Chain's compliance with this Consent Judgment and Permanent Injunction, Gilead shall have the right, upon at least thirty days prior written notice, to have an independent firm, at Gilead's expense, audit Safe Chain records of purchases and sales of all products purchased or sold by Safe Chain after the date of this Consent Judgment. The independent firm shall not be permitted to provide any information discovered during any such audit to Gilead unless it relates to (a) Gilead-branded products; or (b) Safe Chain's lack of compliance with this Consent Judgment and Permanent Injunction. Gilead's right to demand such an audit shall not be exercised more than once in any twelve-month period.

7.     In addition to other remedies, including damages, for contempt of this Permanent Injunction, in the event of breach or violation of the terms of this Permanent Injunction by Safe Chain, or their predecessors, successors, agents, and assigns, or any other person in active concert and participation with them, Gilead is entitled to a preliminary and permanent injunction against the breaching conduct solely upon a showing of likelihood of success of establishing that such a breach occurred. In addition, Gilead shall be entitled to recover its actual attorneys' fees and investigatory fees for investigating and demonstrating that Safe Chain has violated this Consent Judgment and Permanent Injunction.

8.      This Consent Judgment is entered pursuant to Fed. R. Civ. P. 58, and this action is hereby dismissed against Safe Chain Solutions, LLC, Charles Boyd, and Patrick Boyd with prejudice, and Safe Chain's counterclaims against Gilead (*see* Dkt. No. 899) also are dismissed with prejudice, without costs or attorneys' fees, save that this District Court shall retain jurisdiction over this action, including over Safe Chain, for matters relating to implementation of, or disputes arising out of, this Consent Judgment or the settlement of this action.

9.      If a court of competent jurisdiction finds that Safe Chain has violated the prohibitions of this Consent Judgment and Permanent Injunction, Gilead is entitled at its election to either liquidated damages of one hundred times (100x) the U.S. Wholesale Acquisition Cost ("WAC") of the authentic Gilead product that Safe Chain sold (individually, or on its behalf by their principals, agents, attorneys, members, servants, employees, directors, officers, parents, successors, heirs, assigns, executors, representatives, and subsidiaries, and all other persons in active concert or participation with them) or Gilead's actual, statutory, and punitive damages as may be permitted by law.  In any action, regardless of which measure of damages Gilead selects, Gilead shall be entitled to recover its actual attorneys' fees and investigatory fees for finding and demonstrating that Safe Chain has violated this Consent Judgment and Permanent Injunction.

10.     Safe Chain relinquishes all rights to the funds/cash values in the accounts identified below (the "Frozen Settlement Funds"):

| Bank Name/Insurance Company | Account Title/Policy Holder | Account Number Ending In | Balance/Net Cash Surrender Value (Current) |
|---|---|---|---|
| Univest Bank and Trust Co. | Equitable Trust Account | 4019 | $1,925,160.35 |
| Wells Fargo Advisors | Charles & Christi Boyd Investment Account | 6080 | $576,922.66 |
| BayVanguard Bank (1880 Bank) | P. Boyd personal checking Account | 4995 | $275.16 |

| Queenstown Bank of Maryland | Dorchester Holdings LLC Account | 3201 | $48,985.41 |
|---|---|---|---|
| New York Life Insurance Company | Charles Boyd | 24174858 | $76,513.84 |
| New York Life Insurance Company | Charles Boyd | 794414459 | $24,895.47 |
| New York Life Insurance Company | Patrick Boyd | 24174966 | $77,358.42 |
| **TOTAL** | | | $2,730,111.31 |

11.     The Court's Asset Freeze Order (Dkt. No. 19, as modified by Dkt. Nos. 28, 121, 401) as to Safe Chain Solutions, LLC, Charles Boyd, and Patrick Boyd, is hereby MODIFIED as follows:

a.   Counsel for Plaintiffs or Safe Chain may immediately serve this order upon the financial institutions identified or described in Paragraph 10.

b.   Upon service of this Order on any of the financial institutions or life insurance companies identified or described in Paragraph 10, such financial institution shall immediately liquidate all holdings in the accounts and then wire all funds (net of any transaction or broker fees associated with liquidating those assets) in the accounts identified or described in Paragraph 10 to a non-interest-bearing escrow account held by counsel for Plaintiffs at Citibank, Private Banking Division, 153 East 53th Street, New York, NY 10022, ABA # 021000089, Swift # CITIUS33, Account # 54371288, Account Name Patterson Belknap Webb & Tyler LLP Attorney Trust Account-IOLA. Confirmation of the date and amount of each wire transfer shall be sent to counsel for Gilead at GPotter@pbwt.com and counterfeitgileadmedications@pbwt.com and counsel for Safe Chain at

amatteis@wmclaw.com, wcopley@wmclaw.com, mkrauss@wmclaw.com, and wjacobs@wmclaw.com.

    c.   Immediately following the completion of any transfer set forth in Paragraph 11.b above, the financial institution that has completed the transfer shall promptly provide notice to counsel for both Gilead and Safe Chain that the transfer is complete, at the following email addresses: For Gilead, gpotter@pbwt.com and counterfeitGileadmediations@pbwt.com; and for Safe Chain: amatteis@wmclaw.com, wcopley@wmclaw.com, mkrauss@wmclaw.com, and wjacobs@wmclaw.com. Upon receipt of the funds, Gilead's counsel shall promptly confirm by reply email to both the financial institution completing the transfer and Safe Chain's counsel that the transferred funds were received.

12.    Consistent with the foregoing, the Court's asset freeze order (Dkt. No. 19, as modified by Dkt. Nos. 28, 121, 401) as to Safe Chain Solutions, LLC, Charles Boyd, and Patrick Boyd only is otherwise hereby DISSOLVED, but—unless and until further order of this Court—otherwise remains in effect as to any other parties to which it applies as of the date of this order.

13.    Signatures to this Consent Judgment transmitted electronically or by facsimile shall be deemed original.

[*signatures on following page*]

DATED:        February 19, 2024

CONSENTED AND AGREED TO BY:

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____
      Geoffrey Potter
      Timothy A. Waters
      Thomas P. Kurland
      Gizele Rubeiz
1133 Avenue of the Americas
New York, NY  10036-6710
T:  212-336-2000
F:  212-336-2222
E:  gpotter@pbwt.com
    twaters@pbwt.com
    tkurland@pbwt.com
    grubeiz@pbwt.com

*Attorneys for Plaintiffs*
*Gilead Sciences, Inc., et al.*

WEISBROD MATTEIS & COPLEY PLLC

By:   */s/ August J. Matteis, Jr.*
      August J. Matteis, Jr.
      William E. Copley
      Matthew Krauss
      William E. Jacobs
3000 K Street NW, Suite 275
Washington, DC 20007
T:  202-499-7910
E:  amatteis@wmclaw.com
    wcopley@wmclaw.com
    mkrauss@wmclaw.com
    wjacobs@wmclaw.com

*Attorneys for Defendants Safe Chain*
*Solutions, LLC, Patrick Boyd, and Charles*
*Boyd*

**IT IS SO ORDERED**

 s/Ann M. Donnelly
_____
HON. ANN M. DONNELLY, U.S.D.J.

Dated:  2/29/2024 _____, 2024

7